United States Court of Appeals,

Fifth Circuit.

No. 93-5534.

Rita B. BOUTERIE, Petitioner-Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.

Nov. 8, 1994.

Appeal from a Decision of the United States Tax Court.

Before REYNALDO G. GARZA, WIENER and EMILIO M. GARZA,[*] Circuit Judges.

WIENER, Circuit Judge:

Petitioner-Appellant Rita B. Bouterie ("Taxpayer") appeals an order of the United States Tax Court ("Tax Court") denying her request for the costs incurred in litigating a Petition for Redetermination of Taxes ("Petition for Redetermination"), which she filed in response to a Notice of Deficiency ("Notice") issued by the IRS. The Tax Court found that Taxpayer had failed to establish that the IRS' litigation position was not "substantially justified" and thus held that Taxpayer was not entitled to costs pursuant to 26 U.S.C. § 7430. We find to the contrary that Taxpayer established beyond serious question that the IRS' position was wholly lacking in justification, whether substantial or otherwise, given the absence of any defensible basis for that position in law or in fact. We therefore reverse the decision of the Tax Court and remand for a determination of the reasonable litigation costs that Taxpayer may recover.

I

FACTS AND PROCEDURE

The facts and state law issues of this case are no longer in dispute. Taxpayer and William H. Boyle ("Mr. Boyle") were married in 1966 without executing a pre-nuptial agreement. As of November 1978, the spouses were domiciled in Louisiana, and accordingly were subject to the community property laws of that state.

---

[*]Judge Emilio M. Garza concurs in this opinion except for footnote 49.

On November 13, 1978, Taxpayer sued her husband in Louisiana for a "separation from bed and board" (legal separation), which was granted on May 31, 1979. Even though the final judgment of divorce was not rendered until 1985, the 1979 judgment granting the legal separation had the effect of terminating the "community of acquets and gains" (marital community) between Taxpayer and Mr. Boyle *ipso facto,* but retroactively to November 13, 1978, the date Taxpayer had filed her petition for legal separation.

Mr. Boyle was a life insurance agent who was paid on commission. For each insurance policy he sold, he earned both a current "sales commission" and the right to future "renewal commissions" for each subsequent year that the policy remained in force. Mr. Boyle continued to receive renewal commissions on policies he had sold prior to the termination of the marital community with Taxpayer, but he did not share these commissions with her.

Taxpayer subsequently filed a suit in Louisiana to partition all property formerly belonging to the marital community, including the right to receive future renewal commissions on policies sold during the existence of the marital community, *i.e.,* those policies sold prior to November 13, 1979. In 1983, a Louisiana court ruled on the suit, holding, *inter alia,* that:

> Commissions payable to William Boyle on renewal premiums for policies of insurance written prior to November 13, 1978, are community property. Commissions payable to William Boyle on renewal premiums for policies of insurance written on or after November 13, 1978, are the separate property of William Boyle.

This decision was affirmed on appeal.[1]

Even after that judgment became final and executory, though, Mr. Boyle continued to oppose vigorously the payment to Taxpayer of her one-half of any renewal commission income from policies written prior to the date that the marital community was terminated. Beginning September 1, 1985, however, all renewal commission payments on policies written before the termination of the marital community were deposited into an escrow account. On June 17, 1988, pursuant to a partial

---

[1]*See Boyle v. Boyle,* 459 So.2d 735 (La.Ct.App.1984), *cert. denied,* 462 So.2d 651 (La.1985). Taxpayer had also sought a partnership interest in renewal commissions for policies written after the termination of the marital community, so she appealed the trial court's decision denying this claim. A Louisiana appellate court, however, affirmed the trial court's decision. Taxpayer then filed a petition for certiorari with the Louisiana Supreme Court, but the writ was denied.

settlement agreement, all funds in the escrow account were divided equally between the former spouses, who also agreed that all future renewal commissions resulting from policies written before the termination of the marital community would be shared equally. It was not until October 16, 1990, however, that the Louisiana trial court entered an order partitioning the remainder of the assets that had formerly belonged to the marital community, including renewal commissions. As a result, that court ordered Mr. Boyle to pay Taxpayer in excess of $488,000 to equalize the partition; the majority of this amount was required to account for renewal commissions received by Mr. Boyle between 1978 and 1984 (but never shared with Taxpayer) on policies written before November 13, 1978.

In May 1989, while the Louisiana suit was still pending, the IRS issued a Notice to Mr. Boyle, claiming deficiencies of over $400,000 for tax years 1978 through 1984 (except for 1982),[2] an eight-year period during which Mr. Boyle apparently had not filed income tax returns. During this same period Taxpayer also had neglected to file two income tax returns.[3] In the Notice, the IRS determined that Mr. Boyle should have reported as ordinary income (1) one-half of the amount of the renewal commissions he was paid in 1978 (before the marital community was terminated), and (2) the total amount of the renewal commissions he was paid thereafter, regardless of when the policies which generated those renewals had been written.

In August 1989, Mr. Boyle filed a Petition for Redetermination in the Tax Court. He alleged, *inter alia,* that the IRS erred in determining his filing status for tax years 1978 through 1984 and in finding that he owed taxes on the total amount of the renewal commissions for policies written before

---

[2]Subsequently, the IRS discovered that it erroneously calculated the amount of renewal commissions earned by Mr. Boyle, and adjusted his tax deficiency accordingly.

[3]The Tax Court found that Taxpayer did not file returns for 1982 and 1983, *see* slip op. at 564; the IRS, in its Answer to Taxpayer's Petition for Redetermination, alleged that Taxpayer did not file returns in 1981 and 1982. Taxpayer, in her Reply to the IRS' Answer, admitted that she did not file a return in 1981, but asserted that she did file a return in 1982. In two separate pieces of correspondence—a letter dated September 1, 1986 from the IRS Service Center in Austin, Texas and a January 1992 letter from the IRS district counsel—the IRS referred to information contained in Taxpayer's 1982 income tax return. It suffices that, based on this record, it is impossible to determine whether Taxpayer failed to file one or two returns, but the answer to that question does not affect this appeal.

the termination of the marital community.[4]

On January 25, 1991—after the Louisiana judgment of partition had been rendered—the IRS for the first time issued a Notice to Taxpayer, claiming that she owed taxes on renewal commissions resulting from policies written up until the marital community ended but paid in full thereafter to Mr. Boyle between 1978 and 1984. Seizing on the 1983 state court decision, which imprecisely characterized the renewal commissions as "community property"—failing to distinguish between the rights to receive such commissions (which had been community assets) and the commissions actually earned and paid wholly to Mr. Boyle after the marital community terminated—the IRS insisted that Taxpayer had an immediately taxable one-half interest in this renewal commission income regardless of her lack of actual receipt and her legal and factual inability to obtain her share. This determination was clearly inconsistent with the position taken by the IRS in its May 1989 Notice to Mr. Boyle, in which the IRS had claimed that Mr. Boyle was required to declare as his income all renewal commission income received after the marital community was terminated. Nevertheless, based on its bald assertion that Taxpayer owned a community property interest in the renewal commissions, the IRS calculated that she owed an income tax deficiency of $289,562.33 for tax years 1978-82 and 1984.[5]

In April 1991, Taxpayer filed a Petition for Redetermination in the Tax Court, arguing that the deficiencies calculated on the basis of her alleged "community property" interest in the renewal commissions were improper, as they were grounded in an erroneous interpretation of Louisiana law. She also pointed out that any taxes allegedly owed for the 1978 tax year were time barred. In its answer, the IRS conceded that collection efforts for 1978 taxes were barred by the statute of

---

[4]In its decision, the Tax Court referred only to Mr. Boyle's allegation that the IRS erred in determining his filing status. Slip op. at 571-72. In discussing Mr. Boyle's Petition, the IRS vaguely states that he "contest[ed] the Commissioner's determinations." In her Reply Brief filed in this court, Taxpayer states that in the Tax Court Mr. Boyle took the position "that he should only be taxed on one-half (1/2) of the commissions," which was "inconsistent" with his earlier contention that he had a 100% interest in the renewal commissions.

[5]The service also calculated additions to tax in excess of $40,000 and other interest. As with Mr. Boyle's deficiency, the IRS subsequently discovered that it had erroneously calculated the amount of the renewal commissions and adjusted Taxpayer's purported deficiency accordingly.

limitations, but reasserted its contention that Taxpayer had a currently taxable community property interest in the renewal commissions when and as they became payable, and that she thus owed taxes on one-half of the amount of the renewal commissions paid by the company to her husband for the years in which he received such payments.

Responding to an informal discovery request in January of 1992, the IRS reiterated its position that Taxpayer owned a community property interest in the renewal commissions paid to Mr. Boyle in years after termination of the marital community on policies written before its termination.

> [Taxpayer] is taxable on her share of the income from the Policy renewals in the year in which the Policy Renewals were generated. The divorce court ruled that the insurance policies ... were community assets. Under La. Civil Code Article 2338, the ... revenues from community assets are community property. Therefore, by operation of Louisiana law, [Taxpayer] is taxable on ... one-half of the community income generated by the Policy Renewals in the years in which the income was generated.

In this same letter, the IRS admitted "[a]t this time, we do not have any information to indicate that [Taxpayer] "actually' physically received the income from the policy renewals in the years 1978 through 1984." But, for the first time, the IRS proffered another rationale purporting to support its contention that Taxpayer owed taxes on this income: "[I]t is [the IRS'] position that [Taxpayer] "constructively' received the policy renewal income because it was deposited into an escrow account for the benefit of both spouses during the divorce proceedings."

Taxpayer responded promptly by letter dated February 24, 1992, citing authority for the propositions that: (1) after the termination of the marital community, the renewal policies (like every other asset) were no longer community assets but were assets held by the former spouses as co-owners in indivision; (2) the renewal commissions earned after November 13, 1978 were—and could only be—separate income of the co-owners, one-half each; and (3) Taxpayer was not taxable on her share of the renewal commissions because she had neither actually nor constructively received the income.[6]

---

[6]There is nothing in the record to indicate that Taxpayer unilaterally had the power to demand that she be paid directly a one-half share of the renewal commissions in which she held an interest, we thus presume that Taxpayer lacked such authority. Moreover, as Taxpayer's right to renewal commissions was not established until the June 3, 1983 judgment, and the commissions at issue were paid between 1978 and 1984, it is unlikely that Taxpayer could have demanded direct payment for the majority of the payments. In any event, because the IRS never advanced the

In the same February 1992 letter, Taxpayer also pointed out to the IRS that: (1) as a matter of law, Louisiana Civil Code Article 2338, cited by the IRS, is inapposite to Taxpayer as it applies only to income earned during the existence—but not after the termination—of the marital community; and (2) as a matter of fact, no renewal commissions paid between 1978 and 1984 were deposited into the escrow account, as that account had not even been established until August 1985, for commissions paid thereafter.[7]  In concluding, Taxpayer's counsel insisted that the IRS "should immediately concede the renewal premium income issue in full," suggested that he and the IRS meet "for the purpose of bringing this matter to a mutually satisfactory conclusion and to resolve any questions," and offered "to recommend that [Taxpayer] concede her right to recover the reasonable litigation costs of this proceeding, provided settlement can be achieved without further expense to her."

In an April 8, 1992 letter, apparently responding to an April 6, 1992 telephone conference with the IRS, counsel for Taxpayer provided the IRS with citations to and brief summaries of *sixteen* Louisiana state court cases which uniformly and conclusively established that, upon termination of a Louisiana marital community, all assets formerly belonging to the erstwhile marital community automatically become assets co-owned in indivision by each former spouse;  and that such assets could not possibly be community property, given that the marital community no longer exists.  In this letter, Taxpayer's counsel also warned the IRS that "[y]our continued refusal to concede this issue in full is not substantially justified."

The IRS, however, was not to be deterred.  Two days later, in a letter to Taxpayer and *without citing to any authority,* the IRS doggedly maintained that "[b]ased on the information we have at this time and after consideration of the law cited by you, it is our position that the policy renewals earned on the community accounts in this case are community income. Consequently, under

---

position that Taxpayer possessed the power to obtain payment directly, and thus constructively received renewal commission payments, the reasonableness of such a position is not before us.

[7]Taxpayer also alleged that documents provided to the IRS on January 17, 1992 made it apparent that the escrow account was established for renewal commissions paid after August 1985.

Louisiana law, [Taxpayer] ... is taxable on her share...."

Citing a commonality of interests, on April 20, 1992 the IRS moved to consolidate Mr. Boyle's and Taxpayer's Tax Court cases. On April 24, 1992, the consolidation motion was granted; trial was scheduled to commence June 1, 1992.

Sometime early in May, 1992, Taxpayer provided the IRS with an expert opinion dated May 1, 1992. The expert explained that the phrase "community property," as used by the Louisiana court in its 1983 judgment, was simply a shorthand widely used in Louisiana for distinguishing assets of the *former* marital community from assets of the separate estate of each spouse.

Around the same time, the IRS and Mr. Boyle apparently reached a settlement in Mr. Boyle's case: Mr. Boyle agreed to report as his income all of the renewal commissions paid between 1978 and 1984. On or about May 23, 1992—a mere eight days before the scheduled June 1, 1992 trial date (and almost one and one-half years after issuing the Notice to Taxpayer)—the IRS offered to settle Taxpayer's case by conceding that she was not liable for any taxes on the renewal commission income.[8] Taxpayer accepted the offer, and in July 1992, the Tax Court entered a stipulated decision, incorporating the terms of the settlement agreement.

Taxpayer subsequently filed a motion requesting that the Tax Court vacate its decision so that she could file a motion for litigation costs. The Tax Court granted the motion to vacate its decision but denied Taxpayer's request for litigation costs, finding that she had failed to prove that the IRS' position was not substantially justified, as required by § 7430. This appeal followed, raising only the issue whether the Tax Court erred when it denied Taxpayer's request for litigation costs.

II

ANALYSIS

A. LITIGATION COSTS UNDER § 7430

Section 7430 allows a "prevailing party" (other than the United States or any creditor of the

---

[8]The IRS retained a $30,000 adjustment for the year 1982 (resulting in a deficiency of $3,191). This previously unreported income was alimony Taxpayer received from her husband.

taxpayer involved) in tax proceedings to recoup reasonable litigation costs, including attorney's fees.[9] For a taxpayer to be a prevailing party, however, she must meet several statutory requirements. In the instant case, the IRS has conceded that Taxpayer has satisfied all statutory requisites except one: "that the position of the United States in the proceeding was not substantially justified."[10]

In determining whether the government's position is substantially justified under § 7430, we draw on our longer experience with the Equal Access to Justice Act ("EAJA").[11] Borrowing from the jurisprudence under the EAJA, we have stated that "[t]he position of the United States is substantially justified if it is "justified to a degree that could satisfy a reasonable person.'"[12] "It is not enough that a position simply possesses enough merit to avoid sanctions for frivolousness; it must have a "reasonable basis both in law and fact.'"[13] We have noted, however, that the standard "is not as lenient as the standard presently governing fee awards in Title VII cases."[14]

Although the fact that, virtually on the courthouse steps, the IRS conceded its case in the underlying litigation does not compel an award of costs, the outcome of the lawsuit remains a factor to be considered.[15] Still, "[t]he burden of proving no substantial justification [remains] with the taxpayer[ ]."[16]

---

[9]26 U.S.C. § 7430(a)(1) (1988).

[10]*Id.* § 7430(c)(4)(A).

[11]In 1988, Congress amended § 7430 to bring its language more in line with that of the EAJA, 28 U.S.C. § 2412. *Hanson v. Commissioner,* 975 F.2d 1150, 1153 (5th Cir.1992).

[12]*Lennox v. Commissioner,* 998 F.2d 244, 248 (5th Cir.1993) (quoting *Pierce v. Underwood,* 487 U.S. 552, 565, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988)); *Hanson,* 975 F.2d at 1153.

[13]*Lennox,* 998 F.2d at 248 (quoting *Pierce,* 487 U.S. at 565, 108 S.Ct. at 2550 and citing *Hanson,* 975 F.2d at 1153).

[14]*Hanson,* 975 F.2d at 1153 (citing *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 420-21, 98 S.Ct. 694, 699-700, 54 L.Ed.2d 648 (1978)).

[15]*Hanson,* 975 F.2d at 1153 (citing *Estate of Perry v. Commissioner,* 931 F.2d 1044, 1046 (5th Cir.1991) and *S & H Riggers & Erectors, Inc. v. OSH Review Comm'n,* 672 F.2d 426, 430 (5th Cir.1982)); *see Lennox,* 998 F.2d at 248 (citing *Estate of Perry* ).

[16]*Lennox,* 998 F.2d at 248 (citing *Estate of Johnson v. Commissioner,* 985 F.2d 1315, 1318 (5th Cir.1993)).

In the instant case, the Tax Court concluded that Taxpayer failed to establish that the positions taken by the IRS were not substantially justified, as (1) the IRS' Notice to Taxpayer, in which the IRS asserted a position inconsistent with that taken in the Notice to Mr. Boyle, was necessary to protect the public fisc; (2) the IRS' position that Taxpayer possessed an immediately taxable community property interest in the renewal commissions was based on the 1983 judgment of a Louisiana court; (3) the IRS conceded its position within "a short time" after receiving "new evidence" (the expert's opinion) that clarified the "misleading" terminology in the 1983 judgment; and (4) Taxpayer cit ed "no authority on the proper Federal tax treatment of income generated by former community assets of a former Louisiana marital community," the Tax Court thus was "not satisfied" that federal law on the treatment of such income was settled. We review these rulings for abuse of discretion.[17] Accordingly, we "will reverse only if we have a definite and firm conviction that an error of judgment was committed."[18] We review the Tax Court's subsidiary findings of fact for clear error.[19]

B. THE POSITION OF THE IRS

Throughout this dispute—in its Notice to Taxpayer, in its answer to Taxpayer's Petition in Tax Court, in its response to Taxpayer's informal discovery requests, and in its correspondence to Taxpayer as late as one month before the scheduled trial date—the IRS consistently took the position that Taxpayer had a community property interest in the renewal commissions from insurance policies written by her husband prior to the termination of their marital community, but neither payable nor actually paid to her husband until after such termination. Based on this patently erroneous legal conclusion, the IRS continued to insist that Taxpayer was required to report this income for the years in which the commissions were paid to her husband, regardless of whether she had received any of the income or had any way short of litigation to obtain direct payment (which she did not).

As noted, in January 1992, the IRS articulated another "reason" why Taxpayer was deficient

---

[17]*Id.; Hanson,* 975 F.2d at 1153.

[18]*Lennox,* 998 F.2d at 248.

[19]*See Bode v. United States,* 919 F.2d 1044, 1047 (5th Cir.1990).

in the payment of her federal taxes between 1978 and 1984: that she " "constructively' received ... policy renewal income because it was deposited into an escrow account for the benefit of both spouses during the divorce proceedings." This position was as factually wrong (because the account was not established until 1985) as the community property position of the IRS was legally wrong.

As these were the only two positions proffered by the United States in contending that Taxpayer was deficient on her taxes between 1978 and 1984, it is to these positions only that we may look for a reasonable basis in law and fact.[20] We first explain why the IRS' argument that Taxpayer constructively received renewal commission income had no basis in fact; we then demonstrate why the IRS' position that Taxpayer had a community property interest in the assets formerly belonging to the marital community, and thus to the income therefrom, had no basis in fact or law.

C. THE IRS' POSITIONS WERE NOT SUBSTANTIALLY JUSTIFIED

1. *The IRS' Position That Taxpayer "Constructively Received" Renewal Commission Payments Had No Reasonable Basis In Fact*

In a January 31, 1992 letter to Taxpayer, the IRS stated that "[Taxpayer] "constructively' received ... policy renewal income because it was deposited into an escrow account for the benefit of both spouses during the divorce proceedings." Taxpayer responded to the IRS' contention by letter dated February 24, 1992, wherein she provided significant evidence that the IRS' position lacked any basis in fact whatsoever.

Taxpayer explained that the escrow account to which the IRS referred was established November 20, 1985 to receive deposits of renewal commissions paid to Mr. Boyle after August 31, 1985. Taxpayer furnished the IRS several documents confirming these facts.

---

[20]We note that the IRS' primary position, that the renewal commissions were community property, remained constant ever since the IRS issued the Notice to Taxpayer; it was during litigation before the Tax Court that the district counsel first contended that Taxpayer constructively received commission renewal income. These positions therefore are undoubtedly the positions "taken by the United States" in this proceeding. *See Lennox,* 998 F.2d at 247-48 (stating that "[t]here is no question that it is the position taken by the United States on the [date that the notice of deficiency was issued] which we must consider"); *Estate of Johnson,* 985 F.2d at 1319 (stating that "we must not consider the position of the IRS prior to the time the district counsel entered the picture"); *Hanson,* 975 F.2d at 1152 n. 2 (discussing but not deciding the instant at which the position of the United States is established for the purpose of analyzing a request for administrative expenses).

Taxpayer's explanation and supporting evidence conclusively established that no renewal commissions paid to Mr. Boyle during the period at issue here (1978 through 1984) were deposited into the escrow account—nor could they have been. For that account was not even created until 1985! Accordingly, there was absolutely no basis in fact for the IRS to argue that these payments went into an escrow account (which consisted solely of renewal commissions paid *after* August 1985) and thus constituted constructive receipt by Taxpayer of renewal commissions paid to Mr. Boyle between 1978 and 1984. In fact, the IRS itself appears to have recognized that this position was untenable; after receiving Taxpayer's explanation, the IRS never again raised the constructive receipt argument. This apparently failed to convince the IRS to cease and desist pressing its baseless claims, however. Rather, the IRS retreated to its original position that the subject commissions were community property, a position which, as we next explain, had no substantially justifiable basis in either fact or law.

2. *The IRS' Position That Taxpayer Possessed a Community Property Interest in the Renewal Commissions Had No Reasonable Basis in Fact or Law*

Well prior to the time the IRS issued its Notice to Taxpayer, the following principles were well-settled by applicable federal and state law. "[F]ederal income tax liability follows ownership."[21] Ownership, in turn, is determined by state law.[22] For almost 200 years Louisiana law has unwaveringly provided that, after the termination of a marital community, each former spouse is an equal co-owner in indivision of the assets that formerly belonged to the marital community.[23]

---

[21]*United States v. Mitchell,* 403 U.S. 190, 197, 91 S.Ct. 1763, 1768, 29 L.Ed.2d 406 (1971).

[22]*Id.; United States v. Burglass,* 172 F.2d 960, 961 (5th Cir.1949); *Westerdahl v. Commissioner,* 82 T.C. 83, 86, 1984 WL 15522 (1984); *Sharer v. Commissioner,* T.C. Memo 1994-453, 1994 WL 483902.

[23]LA. CIVIL CODE ANN. art. 2369.1 (West Supp.1994) ("After termination of the community property regime, the provisions governing co-ownership apply unless there is contrary provision of law or juridical act."); *Due v. Due,* 342 So.2d 161, 163 (La.1977) ("Included among the assets of the community, thus subject to inventory and spouses' joint ownership at the community's dissolution, are obligations based upon the right to receive money to become due in the future...."); *Lentz v. Lentz,* 411 So.2d 59, 61 (La.Ct.App.1982) ("Our long settled jurisprudence is that following termination of the community between a husband and wife the two parties become owners in indivision of the immovable property which had belonged to the community...."); *Dhuet v. Taylor,* 383 So.2d 1061, 1062 (La.Ct.App.1980) ("On dissolution of the community the parties become co-owners, each with an individual interest.").

Consequently, in Louisiana it is a legal impossibility for a former spouse to own a "community property" interest in any asset of the former community: The marital community simply vanishes; it ceases to exist.[24] And, absent a marital community, there simply can be no "community" property.

On the basis of Taxpayer's post-1978 income tax returns, the 1983 Louisiana court decision in the partition suit, or its January 1991 Notice to Taxpayer (which the IRS addressed to "Ms. Rita B. Bouterie (formerly Rita B. Boyle)" and in which the IRS itself determined that Taxpayer's filing status for taxable years 1979 through 1984 was single) the IRS knew or should have known that Taxpayer's marital community terminated in 1978, pretermitting the existence of any "community property." Nevertheless, the IRS persistently claimed—until May 1992—that Taxpayer owned a community property interest in the renewal commissions, the rights to which had been acquired during the existence of the former marital community but the entitlement to which was not earned until after the community terminated. As long-settled Louisiana law completely forecloses any such argument, the IRS had no reasonable basis in fact or law to assert this position.

Having established that settled Louisiana law dictated that Taxpayer possessed an undivided one-half interest as a co-owner—not a community property interest—in renewal commissions accruing and payable after termination of the marital community (albeit the *right* to receive such commissions when *and if* they eventually accrue had been acquired during the existence of the marital community), we next consider the federal tax implications of this determination. For that, we turn to federal law, as it is federal law that determines when and how a legal interest shall be taxed.[25]

The Tax Court found that the IRS' position that Taxpayer was deficient on taxes between 1978 and 1984 was substantially justified because that court "was not satisfied ... that the law on the Federal income taxation of the payments in question was settled or clear, in view of the fact that there were at that time no Federal tax cases dealing with the taxation of ordinary income generated by

---

[24]*West v. Ortego,* 325 So.2d 242, 245-46 (La.1975) ("Once the community is terminated, certain property which has been community ceases to be so.... The community ceases to exist as a legal entity, and future income or other enrichments belong alone to the party receiving it.").

[25]*Mitchell,* 403 U.S. at 197, 91 S.Ct. at 1768.

assets of a former Louisiana marital community."[26] We, however, find such reasoning untenable; we are satisfied that the applicable law was not only "settled," but was not even open to serious question.

We find nothing remarkable—certainly nothing unsettled—about the application of federal tax law to income generated by assets co-owned in indivision by a cash-basis taxpayer. The fact that such co-ownership results from the termination of the marital community is of no consequence whatsoever. The law has long been clear: Such income is taxed to a cash-basis taxpayer upon receipt.[27] This simple and direct rule does not somehow become murky merely by virtue of the income in question having been generated by the "assets of a former Louisiana marital community."[28]

The conclusion that a cash-basis taxpayer could not possibly owe taxes on income never received is particularly clear in instances when, as here, the right to the income is disputed and the income is never paid or reduced to Taxpayer's control and disposition.[29] In fact, even though Taxpayer has been found by a state court to be entitled as a co-owner in indivision to receive one-half of the renewal commission income which is the subject of the litigation, there is a very real possibility that she may never receive a penny of this income.[30] In light of these facts and the settled law—as repeatedly demonstrated to the IRS by counsel for Taxpayer—the IRS should have conceded its case

---

[26]Slip op. at 573.

[27]26 U.S.C. § 61 ("[G]ross income means all income from ... commissions...."); *id.* § 451(a) ("The amount of any item of gross income shall be included in the gross income for the taxable year in which received by the taxpayer...."); *see, e.g., Farrell v. Commissioner,* 134 F.2d 193, 194 (5th Cir.) (finding that payments owed but not yet paid to a cash-basis taxpayer are not taxable until such payments have been actually or constructively received) (citing *North Am. Oil Consolidated Co. v. Burnet,* 286 U.S. 417, 52 S.Ct. 613, 76 L.Ed. 1197 (1932)), *cert. denied,* 320 U.S. 745, 64 S.Ct. 47, 88 L.Ed. 442 (1943).

[28]Slip op. at 573.

[29]*Kelly v. Commissioner,* 16 T.C. Memo. 34, 1957 WL 650 (1957) ("[W]here a disputed sum is recovered as the result of litigation, it is includable in income in the year recovered and not within the income of the years in which it accrued."); *see, e.g., Farrell,* 134 F.2d at 194; *Osceola Heard Davenport v. Commissioner,* 12 T.C. Memo. 1494 (1953); *Davenport v. Commissioner,* 12 T.C. Memo 860 (1953).

[30]*North Am. Oil Consolidated Co.,* 286 U.S. at 423, 52 S.Ct. at 615 (holding that taxpayer "was not required ... to report as income an amount which it might never receive").

against Taxpayer long before late-May 1992, on the eve of trial.[31]  There is no legal or factual justification whatsoever for the persistence of the IRS in relentlessly pursuing Taxpayer.

Taxpayer timely cited a plethora of precedent to the IRS to establish that income generated from property held in co-ownership is not taxed until receipt, actual or constructive.[32]  Notably, neither the Tax Court nor the IRS questioned Taxpayer's statement of the law.[33]  Nevertheless, the Tax Court considered Taxpayer's authority to be distinguishable, on the sole ground that the cases relied on by Taxpayer arose under the community property law of Texas.

In fact, however, the cases cited by Taxpayer demonstrate the proper application of federal law to ordinary income generated by assets that are co-owned;  it is nothing more than happenstance that the ownership interests involved in the cases cited were determined pursuant to Texas and Wisconsin law.  As the income at issue in these cases was generated from property that was co-owned, and as we can discern no principled reason and no state law differences to account for why federal law should or would draw a distinction in taxing income generated from assets co-owned in Texas or Wisconsin from those co-owned in Louisiana,[34] we are satisfied that the fact that the cases cited by Taxpayer arose in Texas and Wisconsin, rather than in Louisiana, is at most a distinction without a difference—if it is a distinction at all.

---

[31]In January 1992, the IRS conceded that it did "not have any information to indicate that [Taxpayer] "actually' physically received the income from the policy renewals in the years 1978 through 1984."  The IRS also should have known by no later than February 1992 that Taxpayer had not constructively received renewal commission income.

[32]Taxpayer cited as authority 26 U.S.C. §§ 61, 451, *Farrell v. Commissioner,* 134 F.2d 193 (5th Cir.1943), *Kelly v. Commissioner,* 16 T.C. Memo. 34, 1957 WL 650 (1957), and *Davenport v. Commissioner,* 12 T.C. Memo. 860 (1953).  In *Kelly,* a case where each party's respective ownership rights were determined under the law of Wisconsin, the Tax Court held that income from co-owned property is taxable to a co-owner in the year when actually or constructively received—regardless of when the income may have been received by another co-owner.

[33]The Tax Court merely concluded that the law was "unsettled" because the Taxpayer did not cite a decision applying the principle to property held in Louisiana, and the IRS responded by arguing that the renewal commissions were community property or, in the alternative, that the income had been constructively received.

[34]*Cf. McAdams v. Commissioner,* 15 T.C. 231, 1950 WL 267 (1950) (applying federal tax law identically to determine when cash-basis taxpayer could claim deductions for expenses incurred in drilling and developing oil wells in Texas and Louisiana that taxpayer co-owned), *aff'd,* 198 F.2d 54 (5th Cir.1952).

Finally, we note in passing another insurmountable problem with the Tax Court's finding that the IRS position was substantially justified because the application of federal law was unsettled. Section 7430(c)(7) requires that we evaluate "the position taken by the [IRS]." Yet nowhere in the record is there any indication that the IRS ever advanced the position that federal law was unsettled. Neither was the argument advanced that Taxpayer held the property in undivided co-ownership but owed taxes nonetheless because federal law provides that such income is taxable when generated, regardless of receipt.

To the contrary, the IRS consistently asserted—erroneously—that Taxpayer owed taxes because the *renewal commissions were community property.* In fact, in responding to Taxpayer's wealth of authority exposing the fallaciousness of the IRS' community property argument, the IRS never espoused the rejoinder that receipt was immaterial even if the renewal commissions were co-owned. Rather, the IRS asserted what it apparently believed to be a more "settled"—albeit factually erroneous—position: that the renewal commissions had been "constructively received" by being deposited into an escrow account.

Then, when Taxpayer proved irrefutably that the IRS' constructive receipt argument had no basis in fact, the IRS again failed to argue that receipt was immaterial. Instead, the IRS retreated to more familiar ground—reasserting its position that the commissions were community property.

We find the IRS' litigation positions to be either puzzling inconsistencies or implicit acknowledgements that it realized that receipt of income is necessary before a cash-basis taxpayer is required to report income generated by property held in undivided co-ownership.

The IRS' steadfast refusal—even in the face of Taxpayer's irrefutable logic and citation of solidly established law and uncontested fact—to acknowledge that its positions had no basis in law or fact was wholly unreasonable and unjustifiable. As we have previously noted in the context of circuit-shopping in hopes of creating a conflict, the IRS is certainly free to relitigate settled issues of law, but it does so at the risk of incurring the obligation to reimburse taxpayers for their litigation costs, pursuant to § 7430.[35]

---

[35]*See Estate of Perry v. Commissioner,* 931 F.2d 1044, 1046 (5th Cir.1991).

3. *The IRS Cannot Reasonably Rely On "Misleading" Nomenclature in a Louisiana State Court's Opinion*

Unlike the Tax Court, we cannot embrace the notion that the IRS was somehow duped by "misleading" nomenclature in the Louisiana state court's decision partitioning the assets of Taxpayer's former marital community.[36] In its judgment, the Louisiana court wrote that "[c]ommissions payable to William Boyle on renewal premiums for policies of insurance written prior to November 13, 1978, are community property. Commissions payable to William Boyle on renewal premiums for policies of insurance written on or after November 13, 1978, are the separate property of William Boyle." As explained above, however, the term "community property" in this context is universally recognized shorthand, consistently used in Louisiana to distinguish assets of the former marital community from the assets of each former spouse's pre-existing separate estate. That is obviously the way that the Louisiana court used the term in this instance—and the fact that the Louisiana court here adopted this widely understood, customary parlance should have been readily apparent to a District Counsel's Office located in New Orleans.

The IRS cannot remain deliberately ignorant of such a basic tenet of state law, especially when, as here, the IRS is bombarded by correct analyses, citations, and expert opinions timely furnished by counsel for Taxpayer. As discussed above, Louisiana law is crystal clear on this point: A spouse has an undivided co-ownership interest in the assets formerly belonging to the terminated marital community. To read the Louisiana court's opinion to mean that Taxpayer mystically possessed a community property interest in these assets long after the marital community ceased to exist, the IRS would have to blind itself to this long-settled precedent and engage in a flight of legal fantasy.

Second, in many of the cases Taxpayer cited to the IRS, Louisiana courts used the shorthand

---

[36]The Tax Court found that "ultimately [the IRS] conceded that [its] interpretation of this aspect of Louisiana law was incorrect." The Tax Court "attribute[d] [the IRS'] concession to the fact that [Taxpayer's] attorney obtained an expert opinion from a specialist in Louisiana domestic relations law," explaining the "misleading" use of the term "community property" in the Louisiana district court's opinion. The Tax Court noted that, once the IRS received the expert opinion, the agency conceded the point "within a short time."

"community property" to refer to property that actually was held in undivided co-ownership.[37] The fact that the Louisiana court here also adopted this convention should have been particularly apparent from the context: The state court used the phrase in the first of two consecutive clauses to distinguish assets of the former community from Mr. Boyle's separate assets.

Third, if—as Taxpayer's expert opined, the IRS apparently agreed, and we recognize—it is the "*custom* in domestic relations courts in Louisiana to use the term "community property' in lieu of the more cumbersome, but understood, phrase "assets of the former marital community,' "[38] we cannot believe that the District Counsel Office in New Orleans (which undoubtedly handles myriad cases in which property interests are governed by Louisiana law) could not have been aware of this convention. Assuming arguendo that such was the case, however, we decline to excuse such ignorance.

Time and again Taxpayer tried to explain the situation to the District Office and offered to introduce an expert to testify to as much. The IRS, however, remained deaf to Taxpayer's clarifications and spurned her entreaties, responding that it needed no expert to interpret Louisiana law and vowing to resist any attempt to introduce such an expert to explain Louisiana law. If it has demonstrated nothing else, the IRS has proved that it certainly *did* need such expert assistance. As the IRS deemed itself sufficiently adept at Louisiana law to eschew the need for expert assistance,

---

[37]*See, e.g., Williams v. Williams,* 509 So.2d 77, 78-79 (La.Ct.App.1987) ("This is an appeal from a judgment of partition of *community property....* Each *owner in indivision* is entitled to possess or use the *common property....*" (emphasis added)); *Michel v. Michel,* 484 So.2d 829, 830 (La.Ct.App.1986) ("This is a suit to partition *community property....* A *co-owner* in possession is entitled to be reimbursed expenses for the preservation of the *common property* following the judgment of separation." (emphasis added)); *Dhuet v. Taylor,* 383 So.2d 1061, 1062 (La.Ct.App.1980) ("Appellant lastly argues that the trial judge erred in ordering Mr. Dhuet to pay her ... total and complete portion of the *community.* We agree. On dissolution of the community the *parties become co-owners,* each with an individual interest.... We know of no authority that would allow the trial judge to adjudicate the *community property* to one spouse upon payment of a certain sum of money to the other spouse." (emphasis added)); *see also Due v. Due,* 342 So.2d 161 (La.1977) ("In Louisiana, all property acquired by the labor and industry of the spouses during the marriage belongs to the *community of acquets and gains* existing between them.... *[A]ssets of the community,* thus subject to inventory and spouses' *joint ownership* at the community's dissolution, are obligations based upon the right to receive money to become due in the future." (emphasis added)).

[38]Slip op. at 572-73 (emphasis added).

we decline to excuse its steadfast hewing to legal error, now that the IRS' interpretation of the law has been shown conclusively and admittedly to be wrong.

For these very same reasons, we reject the IRS' argument on appeal that not until it received the letter from Taxpayer's expert did it have "any indication that in Louisiana, in the context presented here, the term "community property' is sometimes used as a shorthand to denote assets of the former community." Accordingly, we find clearly erroneous the Tax Court's factual finding (and equally erroneous its legal conclusion) that this letter from Taxpayer's expert constituted "new evidence."[39] It was at best cumulative of the kind of evidence that the Taxpayer had implored the IRS to consider time after time. We conclude that the IRS knew, or should have known, of this convention long before May 1992.

4. *Putative Justifications for the IRS' Positions*

The Tax Court in its opinion, and the IRS in its brief, search for some justifications for the IRS' taking inconsistent positions in this case.[40] On the one hand, the Tax Court found that the IRS was justified in taking inconsistent positions regarding who was liable for the taxes on the renewal commissions,[41] because by failing to file returns, Mr. Boyle and Taxpayer had made it impossible for the IRS to determine whether the former spouses would treat the renewal payments consistently.[42]

---

[39]*See Lennox v. Commissioner,* 998 F.2d 244, 248 (5th Cir.1993).

[40]The Tax Court in the past has "urge[d] the Commissioner ... to indicate clearly to the taxpayer [when a] claim is being presented in the alternative and that there is no intention to tax the same income twice." *Doggett v. Commissioner,* 66 T.C. 101, 104, 1976 WL 3604 (1976). Nowhere in the record, however, is there evidence that the IRS indicated that its claim against Taxpayer was being litigated in the alternative or that Taxpayer's alleged deficiencies would be collected only if the IRS were unable to collect from Mr. Boyle.

[41]In its Notices to Taxpayer and Mr. Boyle, the IRS took inconsistent positions regarding who was liable for the taxes on the renewal commissions. "The IRS may take an inconsistent position to protect revenue, if it does so with good cause." *Powell v. Commissioner,* 91 T.C. 673, 679, 1988 WL 98350 (1988), *rev'd on other grounds,* 891 F.2d 1167 (5th Cir.1990).

[42]The Tax Court concluded that it was impossible for the IRS to determine whether Mr. Boyle and Taxpayer would treat the renewal commissions consistently, but the record reveals that, if true, this problem arose because of Mr. Boyle's omissions—not from anything Taxpayer did or failed to do.

Taxpayer's returns both during and after the applicable period reveal that she treated income generated by the renewal commissions as taxable upon receipt. During the

The IRS, on the other hand, argues that it adopted its inconsistent litigation positions to avoid a "whipsaw" situation. A whipsaw occurs when taxpayers treat the same transaction involving the same income inconsistently, thus creating the possibility that the income could go untaxed. Aside from the fact that, based on this record, these explanations "look[ ] and smell[ ] like *post hoc* rationalizations,"[43] they, at most, help explain *why* the IRS chose to adopt inconsistent positions as a litigation strategy. They do not, however, excuse the IRS for pursuing a litigation position wholly lacking in a reasonable basis in fact or law.

We do not question that there are instances in which the IRS may be required to adopt inconsistent positions to protect the public fisc. Even in such instances, though, the positions taken by the United States still must have a reasonable basis in fact and law if the government is to avoid liability for litigation costs under § 7430.[44] Otherwise, the "good cause" provision would become an exception that would entirely swallow the "substantial justification" rule; it would allow the IRS to pursue a position without a reasonable basis in both law and fact.

Further, regarding the IRS' allegation that it faced a whipsaw, we note with considerable interest that the Tax Court did not so find.[45] The Tax Court explicitly stated that "the positions of

---

applicable period, Taxpayer filed returns every year, with the exception of, at most, two. In these returns, Taxpayer did not report income from the renewal commissions, and the IRS ultimately conceded that this treatment was correct. Moreover, in 1988 when Taxpayer finally did receive income from a escrow fund established in 1985 for renewal commissions that accrued during the years 1985 through 1988, she promptly reported such income. Taxpayer therefore consistently treated the renewal commissions as though she owned them in co-ownership in indivision, and reported commission income as taxable upon receipt. The Tax Court's factual finding to the contrary—that Taxpayer's position was "nonexistent"—was clearly erroneous.

[43]*See Estate of Johnson v. Commissioner,* 985 F.2d 1315, 1320 (5th Cir.1993). There is nothing in the record to indicate that the IRS proffered either of these positions during the underlying litigation. Accordingly, as with the Tax Court's conclusion that federal law was unsettled, neither of these rationalizations were "positions taken by the United States."

[44]*Doggett,* 66 T.C. at 103 ("It is also well established that in tax litigation the Commissioner may, in notices of deficiency, present alternative claims for deficiencies *when there is a basis for doing so.*" (emphasis added)).

[45]We agree, albeit for different reasons. The record is unclear as to whether Mr. Boyle ever took the position that he did not own all of the income from the renewal commission income paid after the termination of the marital community. It is clear, however, that at least until litigation commenced in Tax Court, far from acting as though the commissions were "community

the [formerly] related taxpayers were not so much inconsistent as nonexistent."[46]

The IRS' also misplaces its reliance on *Wickert v. Commissioner.*[47] In *Wickert,* the IRS was confronted with a classic whipsaw situation. A former husband sought to deduct certain payments to his wife as alimony, while his former wife sought to exclude these same payments from her taxable income, claiming they were part of a property settlement. To avoid this whipsaw, the IRS issued notices of deficiency to both former spo uses, disallowing the former husband's deduction and requiring the former wife to include the payments as income. When the former husband did not contest the disallowance, the IRS conceded its case against his former wife. The former wife then sought litigation costs, which both the Tax Court and the Eighth Circuit denied. The IRS argues that Taxpayer's case is similar to *Wickert.* We disagree.

In *Wickert,* the Eighth Circuit held that in analyzing the reasonableness of the IRS' position, the then-applicable version of § 7430 required that the court look only to the IRS' in-court litigation position—not to the IRS' position during the administrative proceedings.[48] Accordingly, the court limited its review to the IRS' position once litigation commenced in the Tax Court. Accordingly, the Eighth Circuit considered only the reasonableness of the IRS' decision to concede the case shortly after filing its answer. As the IRS never wavered from that decision and it did not unreasonably delay in executing a stipulation to end the litigation, the court held that the IRS' in-court position was

---

property," for years Mr. Boyle had vigorously asserted his claim to all of the renewal commissions as his separate property, and between 1978 and 1984, he never paid his wife one penny of the income received therefrom. Taxpayer, on the other hand, consistently contended that she was entitled to an undivided co-ownership in these commissions and eventually established this position in 1983.

[46]Slip op. at 571. The Tax Court did express its concern that some renewal commission income might have escaped taxation if Mr. Boyle had established the position that he was taxable on only 50 percent of the income and the IRS had not issued a Notice to Taxpayer. The Tax Court, however, did not attribute this potential situation to the fact that the IRS faced a whipsaw situation, but rather to the fact that, in the Tax Court's opinion, the IRS was proceeding in the dark as a result of both taxpayers' failure to file taxes.

[47]842 F.2d 1005 (8th Cir.1988).

[48]The court acknowledged that the Fifth Circuit construed the same section differently, permitting an inquiry in the IRS' position in either in-court or administrative proceedings. *Wickert,* 842 F.2d at 1008 (citing *Powell v. Commissioner,* 791 F.2d 385, 388-92 (5th Cir.1986)).

"eminently reasonable."

The court in *Wickert* did not—as the IRS here intimates—hold that it was "eminently reasonable" for the IRS to issue Notices against both husband and wife whenever the IRS is faced with a potential whipsaw situation. In its concluding paragraph, the *Wickert* court expressly stated that it did not reach this issue: "We do not consider whether the Commissioner's activities in connection with the initial deficiency determination ... were reasonable because they were not part of the IRS' in-court litigating position, but rather occurred at the administrative level." *Wickert* thus provides no support for the argument that the IRS acts reasonably whenever its issues Notices to taxpayers who for tax purposes treat the same transaction involving the same income inconsistently. Much less does *Wickert* support the notion that the IRS is substantially justified in maintaining a clearly erroneous legal position up until the eve of trial for the sole purpose of protecting revenue that is at risk only if the Tax Court rules contrary to well-established law.

In sum, we cannot avoid the conclusion that the Tax Court abused its discretion in finding the position of the United States substantially justified. The IRS has conceded that Taxpayer satisfied all other statutory requisites for entitlement to costs leaving inescapable the result that Taxpayer is entitled to all reasonable litigation costs provided by § 7430. As the Tax Court did not calculate these costs, we must remand this case to that court for the limited purpose of determining the amount Taxpayer shall recover.

### III

### CONCLUSION

As is by now obvious, we find the actions of the IRS in this Taxpayer's nightmare to be much worse than merely *not* substantially justified. We find them to be wholly unjustified. Accordingly, that part of the Tax Court's Order and Decision denying Taxpayer's request for costs is REVERSED, and this proceeding is REMANDED for the sole purpose of permitting the Tax Court to determine the quantum of costs due to the Taxpayer under § 7430, including reasonable costs and attorney's

fees for this appeal.[49]

---

[49]In light of the foregoing analysis and other recent jurisprudence of this circuit addressing the application of § 7430, we entreat the Tax Court henceforth to be a bit less chary when considering taxpayers' claims under that section.