John F. and Tracy L. BARFORD, Marcus R. Messman, Davis W. Messman, and Stephen A. Messman, Petitioners–Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

No. 98–2125.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 6, 1999.

Decided Oct. 8, 1999.

Stephen T. Link (argued), Evansville, IN, for Petitioners–Appellants.

Teresa McLaughlin, Marion E. Erickson (argued), Dept. of Justice, Tax Division, App. Section, Washington, DC, for Respondent–Appellee.

Before POSNER, Chief Judge, and COFFEY and KANNE, Circuit Judges.

COFFEY, Circuit Judge.

In June 1991, after a multi-year investigation, the Commissioner of Internal Revenue ("Commissioner") issued notices of deficiency of more than half a million dollars to each of the taxpayer-appellants. The notices stated that the taxpayers were liable for additional tax because 1) they undervalued stock they received, and 2) they avoided interest income on loan transactions. The taxpayers contested the notices of deficiency and requested a trial. Shortly before trial, the Commissioner reached a settlement with the taxpayers on the issue of the valuation of the stock, conceding that his position did not have a reasonable basis in law or fact. In March 1993, a trial on the I.R.C. § 482 imputed interest income issue was held in the Tax Court, but before a final ruling issued, the Commissioner conceded that interest income should not be imputed to the taxpayers and settled with them in May 1993. Thereafter the taxpayers filed a petition in the Tax Court for all of their litigation costs under I.R.C. § 7430, asserting that they could not allocate their fees between the two issues. The Commissioner filed an objection. The Tax Court found for the Commissioner and denied the petition for costs holding that the taxpayers failed to prove they were the prevailing parties as required under I.R.C. § 7430.

On appeal, the taxpayers argue that because the Commissioner did not have a reasonable basis in law or fact for his position on the question of I.R.C. § 482 imputed interest income they should be considered the prevailing party. The Commissioner contends that although he eventually conceded that interest income should not be imputed to the taxpayers, his original position was reasonable. We affirm and hold that the Tax Court did not abuse its discretion in denying the taxpayers an award of litigation costs.

## I. BACKGROUND

### A. *Companies and Transactions*

Raymond and Mary Frances Messman, and their four children, Marcus, Davis, Stephen, and Tracy Barford,[1] owned and operated several farming and oil companies, including RAM Drilling, TMC Farms, Marco Oil, TMC Oil, and Sentry Investment, in southern Illinois. Marcus, Davis, Stephen and Tracy (the "Messmans") formerly owned, as sole and equal shareholders, TMC Resources, Inc. Prior to 1983, TMC Resources was the parent corporation of a consolidated group of corporations, and it owned 100% of the stock of the following companies: RAM Drilling, TMC Farms, Marco Oil, TMC Oil, and Sentry Investment.

In January 1982, Marco Oil transferred $2,700,000 to RAM Drilling and $420,000 to TMC Farms. Contemporaneously,

---

1. John Barford is married to Tracy. John was a party to the Tax Court litigation because he and Tracy filed joint tax returns for the years in question.

RAM Drilling and TMC Farms executed an agreement to repay the sums to Marco Oil at 14% interest. Marco Oil later transferred additional funds to RAM Drilling and TMC Farms, thus increasing the total amount of money involved in the transactions. Between January and October 1982, RAM Drilling made an unspecified number of payments and TMC made one payment to Marco Oil. Neither RAM Drilling nor TMC Farms ever made any interest payments, as the payments were applied entirely to principal. The payments made by RAM Drilling and TMC Farms were recorded in repayment schedules. Then in October 1982 the interest term on both notes was terminated.

Also in 1982, the Messman–Barford family sold their extensive oil property holdings to Gary Energy for approximately $22 million. To avoid recognizing gain and the resulting tax liability, TMC Resources and its five subsidiaries chose to liquidate, as permitted under I.R.C. § 337, and, through a series of transactions, distribute their assets to the four shareholders, the Messman children. This liquidation and transfer of assets maneuver allowed TMC Resources and the subsidiaries to avoid the tax liability from the sale. Instead, the Messman children became personally liable for the taxes. On March 25, 1983, TMC Resources contributed its Sentry Investment stock to RAM Drilling, and RAM Drilling liquidated Sentry Investment three days later. On March 26, 1983, TMC Resources transferred its TMC Farms stock to RAM Drilling. On March 28, 1983, TMC Oil and Marco Oil (the company holding the payment agreements with RAM Drilling and TMC Farms) were liquidated, and all of their assets and liabilities were distributed to TMC Resources. Marco Oil's payment agreements with RAM Drilling and TMC Farms were likewise assigned to TMC Resources at this time. On March 31, 1983, TMC Resources was liquidated and all of its assets, including the payment agreements, and liabilities were equally distributed to its four shareholders, the Messman children. The same day they received the notes, the Messman children assigned the notes to their partnership, TMC Enterprises. As a result of this liquidation of TMC Resources, the Messman children became the direct owners of the RAM Drilling stock.

In April 1984, the debts owed by RAM Drilling and TMC Farms were restructured as zero percent convertible subordinated debentures[2] in the amounts of $3,195,285 and $1,655,000, respectively. Then, in January 1985, TMC Enterprises made a capital contribution to RAM Drilling by canceling RAM Drilling debentures in the amount of $2,332,285 and by transferring to RAM Drilling the $1,655,000 payment agreement from TMC Farms. As a result of this capital contribution and transfer, the balance due to TMC Enterprises on the debentures was $825,000.

B. *Notices of Deficiency and Petitions Filed in the Tax Court*

During the summer of 1984, the Internal Revenue Service (IRS) decided to examine the tax liabilities of the Messman children, their parents, and the various family-owned businesses. Over the course of the five-year audit, the IRS raised numerous issues. With the exception of the two that are the subject of this litigation, all other issues were resolved during the administrative process through appeals office conferences and rulings.

In June 1991, the Commissioner issued statutory notices of deficiency in excess of $500,000 to each of the Messman children. In the notices of deficiency, the Commissioner determined that the Messmans were liable for taxes on imputed interest income under I.R.C. § 482 on the notes

---

2. A convertible subordinated debenture is an unsecured debt which entitles the holder to payment before assets are distributed to shareholders, but is junior to all other debt.

Under certain circumstances, the convertible subordinated debenture may be converted into stock.

from RAM Drilling and TMC Farms because had the payment agreements been arms length transactions interest would have been paid. The Commissioner believed that the Messmans eliminated the interest term from the payment agreements to avoid paying taxes. The Commissioner further concluded that the Messmans owed additional taxes as a result of valuing the RAM Drilling stock at $720,725 instead of its actual worth of $7,249,228 for the I.R.C. § 337 liquidation of TMC Resources. The Messmans filed individual petitions in the Tax Court contesting these two determinations. The Tax Court consolidated the Messmans' cases.

The parties settled the issue of the RAM Drilling stock valuation on the eve of trial. In the settlement, the IRS stipulated to a fair market value of $720,725 for RAM Drilling. The IRS concedes that its position on the issue of the valuation of the RAM Drilling stock had no reasonable basis in law or fact.

In March 1993, a trial was held on the issue of the imputed interest income pursuant to I.R.C. § 482. Prior to the Tax Court ruling, the Commissioner conceded that interest income should not be imputed to the Messmans and the parties settled the cases. On July 3, 1996, the Tax Court entered stipulated decisions with deficiencies of less than $15,000 for each of the Messmans.

### C. Litigation Costs

On August 1, 1996, the Messmans filed a motion for their litigation costs under I.R.C. § 7430, and the Tax Court vacated the July decision in order to consider the motion. The Commissioner filed an objection to the Messmans' motion. In the objection, the Commissioner conceded that his position with respect to the valuation of the RAM Drilling stock had not been substantially justified, that is, without a reasonable basis in law or fact. The Commis-

sioner acknowledged that the Messmans had substantially prevailed in the case because he acquiesced to their position on both issues, that they had exhausted their administrative remedies, and that they had not unreasonably protracted the litigation. But the Commissioner maintained that his position on the I.R.C. § 482 imputed interest income had been substantially justified. The Commissioner also asserted that the Messmans had failed to demonstrate that they satisfied the I.R.C. §. 7430 net worth requirements[3] and that their litigation costs were reasonable. In their response, the Messmans stated that the stock valuation and I.R.C. § 482 imputed interest income issues were intertwined, precluding them from allocating their litigation costs between the two. They also filed additional materials in support of their contention that they met the net worth requirement and that their litigation costs were reasonable.

In January 1998, the Tax Court denied the Messmans' motion for litigation costs. The Tax Court found that the Commissioner's position with respect to the I.R.C. § 482 imputed interest income issue was substantially justified because it had a reasonable basis in both the law and facts. The Tax Court then ruled that, because the Messmans had conceded that their litigation costs could not be allocated between the stock valuation and I.R.C. § 482 imputed interest income issues, they were not entitled to the award of fees. As a result, the Tax Court did not reach the issues of whether the Messmans had proven that they met the net worth requirement and that their litigation costs were reasonable.

## II. ISSUE

On appeal, we consider whether the Tax Court erred in denying the Messmans' petition for litigation costs under I.R.C.

---

**3.** To receive reimbursement for litigation costs under I.R.C. § 7430, an individual's net worth may not exceed $2 million at the time the civil action was filed. 28 U.S.C. § 2412(d)(2)(B).

§ 7430 by finding that the Commissioner's position on the I.R.C. § 482 imputed interest income issue was substantially justified even though the Commissioner eventually conceded the Messmans' position on the issue in a settlement with them.

## III. ANALYSIS

### A. *Standard of Review*

■ We review the Tax Court's decision concerning the award of litigation costs under I.R.C. § 7430 for an abuse of discretion. *See Wilfong v. United States*, 991 F.2d 359, 364 (7th Cir.1993). This is a deferential standard, but even so we must conduct a meaningful review of the decision. *See Id.* (quotation and citation omitted).

### B. *Standard for Awarding Litigation Costs Under I.R.C. § 7430*

■ Under I.R.C. § 7430 taxpayers may recover litigation costs if they exhaust all administrative remedies available to them; do not unreasonably protract the proceeding; prevail in the litigation; and demonstrate that their litigation costs are reasonable. I.R.C. § 7430(b); *Zinniel v. Commissioner*, 883 F.2d 1350, 1356 (7th Cir.1989). To be a prevailing party, a taxpayer must demonstrate that 1) he has "substantially prevailed with respect to the amount in controversy" or with respect to the "most significant issue or set of issues presented"; and 2) that the Commissioner's position was not substantially justified. I.R.C. § 7430(c)(4); *Wilfong*, 991 F.2d at 364. The Commissioner's position is substantially justified " 'if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact.' " *Wilfong*, 991 F.2d at 364 (quoting *Pierce v. Underwood*, 487 U.S. 552, 566 n. 2, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)). On the other hand, if the Commissioner's position merely possesses sufficient merit to

avoid sanctions, it is not substantially justified. *See Estate of Cervin v. Commissioner*, 111 F.3d 1252, 1261–62 (5th Cir.1997) (Commissioner's position is not substantially justified if he knew or should have known that his position was baseless); *Bouterie v. Commissioner*, 36 F.3d 1361, 1367 (5th Cir.1994). In this case, the burden of proving that the Commissioner's position was not substantially justified rests with the Messmans.[4] *See Bouterie*, 36 F.3d at 1367.

### C. *Commissioner's Position on Interest Income Issue Substantially Justified*

■ The Messmans argue that the Tax Court abused its discretion in finding that the Commissioner's position on the I.R.C. § 482 imputed interest income was substantially justified, and in denying their petition for litigation costs. The Messmans contend that because the Commissioner eventually agreed that interest income should not be imputed to them, this concession establishes that the position was never substantially justified. In our opinion the Messmans overstate the significance of the concession in evaluating whether the Commissioner's position was substantially justified. Although the concession is a factor to be considered in the determination, it does not automatically mandate a finding that the Commissioner's original position was not substantially justified. *Bouterie*, 36 F.3d at 1367. Instead, a substantial justification finding is based on all the facts and circumstances surrounding the case, not solely upon the final outcome. *Phillips v. Commissioner*, 851 F.2d 1492, 1499 (D.C.Cir.1988).

Section 482 "is designed to prevent artificial shifting, milking, or distorting of the true net incomes of commonly controlled enterprises." *Commissioner v. First Security Bank*, 405 U.S. 394, 400, 92 S.Ct.

---

4. Congress recently amended § 7430 to provide that the Commissioner bears the burden of proving that his position was substantially justified. Taxpayer Bill of Rights 2, Pub.L. 104–268, § 701, 110 Stat. 1452, 1463. The amendment applies to proceedings commenced after July 30, 1996, and therefore does not apply to this case.

1085, 31 L.Ed.2d 318 (1972) (quotation and citation omitted). The statute provides:

> In any case of two or more organizations, trades, businesses ... owned or controlled directly or indirectly by the same interests, the Secretary may distribute, apportion, or allocate gross income, deductions, credits, or allowances between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any such organizations, trades, or businesses.

I.R.C. § 482. "The purpose of § 482 is to place a controlled taxpayer[5] on a tax parity with an uncontrolled taxpayer, by determining according to the standard of an uncontrolled taxpayer, the true taxable income from the property and business of a controlled taxpayer." *First Security Bank,* 405 U.S. at 400, 92 S.Ct. 1085.

Here, the Commissioner believed that by forgiving the interest on loans made by one of their wholly-owned subsidiaries to others, the Messmans avoided income taxes. The Treasury Regulation interpreting and applying I.R.C. § 482 provides:

> Where one member of a group of controlled entities makes a loan or advance directly or indirectly to, or otherwise becomes a creditor of, another member of such group and either charges no interest, or charges interest at a rate which is not equal to an arm's length rate of interest ... with respect to such loan or advance, the district director may make appropriate allocations to reflect an arm's length rate of interest for the use of such loan or advance.

Treas. Reg. § 1.482–2(a). This regulation has the same force of law as the Internal Revenue Code. Treas. Reg. § 1.0–1. The Messmans argue that I.R.C. § 482 is not applicable because the funds that Marco Oil provided to RAM Drilling and TMC Farms were capital contributions, not

loans. The Messmans assert that, even though the financial arrangements between Marco Oil and RAM Drilling and TMC Farms were labeled loans, it is the substance of the transactions, not the terminology used to describe them, that matters: We agree that, although the denomination given the transactions is relevant, it is not determinative. *Post Corp. v. United States,* 226 Ct.Cl. 343, 640 F.2d 1296, 1304 (1981). The problem with the Messmans' argument is that in this case, leaving aside the terminology used, all the other aspects of the initial transactions between Marco Oil and RAM Drilling and TMC Farms indicate the transactions were loans. After all, payment agreements were executed; there is no evidence that the funds were intended as equity investments in RAM Drilling and TMC Farms; an interest rate was originally set at 14%; and the payments made by the companies were recorded in loan repayment schedules.

The Messmans further contend that because RAM Drilling and TMC Farms were not financially able to make interest payments the monetary transfers Marco Oil made to the two companies should not be characterized as loans. Yet, the Messmans have failed to offer any support for their contention that RAM Drilling and TMC Farms could not make the payments. In fact, RAM Drilling made an unspecified number of payments and TMC Farms made one payment.

Moreover, the critical test under I.R.C. § 482 is whether the transaction has the same terms that independent parties dealing at arm's length would have made. *Likins–Foster Honolulu Corp. v. Commissioner,* 840 F.2d 642, 646–47 (9th Cir.1988); *Liberty Loan Corp. v. United States,* 498 F.2d 225, 228 (8th Cir.1974); *B. Forman Co. v. Commissioner,* 453 F.2d 1144, 1155 (2d Cir.1972); *see also* Treas. Reg. § 1.482–1(c). Here, Marco Oil initially gave RAM Drilling and TMC Farms a

---

5. Controlled taxpayers are organizations, trades or businesses owned or controlled directly or indirectly by the same interests. *See* I.R.C. § 482.

combined total of $3.1 million, enough money so that unrelated parties, dealing at arm's length, would surely expect to be repaid with interest. *See B. Forman Co.*, 453 F.2d at 1156. Because the Messmans can only prove that the interest-free loan agreement was valid if they can demonstrate that independent parties in an arm's length transaction would have entered into the same arrangement, *see Kahler Corp. v. Commissioner*, 486 F.2d 1, 5 (8th Cir. 1973), and they have not even attempted to make such an argument, we conclude that the district court did not abuse its discretion in finding that the Commissioner had a reasonable basis in law and fact for his position on the I.R.C. § 482 imputed interest income.

### D. *No Award for Unallocated Litigation Costs*

The Messmans maintain that they cannot allocate their litigation costs between the stock valuation and the § 482 imputed interest income issues. They contend that the issues were so intertwined that the litigation costs cannot be separated. This position precludes the Messmans from recovering any of their litigation costs under § 7430, even though the Commissioner conceded that his position on the stock valuation issue was not substantially justified. In order to recover all their litigation costs under § 7430, the Messmans must prove that the Commissioner's position on both issues was not substantially justified. The Messmans have failed to meet their burden. Consequently, they are not eligible for reimbursement of their litigation costs under § 7430.

### IV. CONCLUSION

We hold that the Tax Court did not abuse its discretion in denying the Messmans' petition for litigation costs. The Messmans stated that they were unable to differentiate litigation costs between the stock valuation dispute and the § 482 imputed interest dispute because the two issues were so intertwined. As such, the court concluded that they were barred from collecting litigation costs unless, under § 7430, the Messmans were able to demonstrate that the Commissioner's position on both issues was not substantially justified. Although the Commissioner admitted in a stipulation that his position on the stock valuation was not substantially justified, the Messmans fell short of convincing us that the Commission's position on the § 482 imputed interest issue was also not substantially justified. For all these reasons, the Messmans are not entitled to their litigation costs, and the judgment of the Tax Court is AFFIRMED.