T.C. Memo. 1998-418


UNITED STATES TAX COURT


STEPHEN D. PODD, ET AL., Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent[*]


Docket Nos. 20225-93, 20226-93,    Filed November 18, 1998.
              20227-93, 20228-93,
              20229-93,  6209-94,
               6210-94,  6211-94,
               6212-94,  6213-94,
               6214-94.[1]


Kevin M. Flynn and Julian W. Dority, for petitioners.

John Aletta, Elise Frost Alair, and Bradford A. Johnson, for

respondent.

---

[*]    This Supplemental Memorandum Opinion supplements our prior
Memorandum Opinion in the instant case, Podd v. Commissioner,
T.C. Memo. 1998-231, filed June 30, 1998.

[1]    The following cases are consolidated herewith:  Victor I.
Podd, docket No. 20226-93; Victor T. Podd, docket No. 20227-93;
Powertex, Inc., docket No. 20228-93; Powertex, Inc., docket No.
20229-93; Powertex, Inc., docket No. 6209-94; Victor T. Podd,
docket No. 6210-94; Victor I. Podd, docket No. 6211-94; Stephen
D. Podd, docket No. 6212-94; Julia Podd, docket No. 6213-94; and
Powertex, Inc., docket No. 6214-94.

SUPPLEMENTAL MEMORANDUM OPINION

WELLS, <u>Judge</u>:  This matter is before the Court on petitioners' motion pursuant to Rule 161 for reconsideration of our prior Memorandum Opinion, T.C. Memo. 1998-231 (prior opinion).  Unless otherwise indicated all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.  Petitioners ask that we reconsider our prior opinion that held, inter alia, that petitioner Victor I. Podd, Jr. (hereinafter petitioner), was not a Canadian resident during 1990 and that he was a U.S. resident during that year.

We incorporate into this Supplemental Memorandum Opinion by reference the findings of fact in our prior opinion. Additionally, we restate below certain of those findings that are relevant to the issues presented by the instant motion.  We also set forth below certain supplementary findings of fact that were not set forth in our prior opinion but which are based on the record of the trial of the instant case and relevant to our analysis below.

Petitioner was born and raised in Canada and is a Canadian citizen.  Since 1970, petitioner's family has maintained a home in Montreal, Province of Quebec, Canada (family home).  On July 6, 1987, petitioner applied for U.S. resident alien immigration status.  The Immigration and Naturalization Service (INS) granted

resident alien status to petitioner on July 7, 1987, which petitioner held through December 31, 1990.

During 1990, petitioner owned 24 percent of the outstanding shares of the following corporations: Powertex, Inc. (Powertex), a Vermont corporation, Powertex Plus, Inc. (Powertex Plus), a Montreal corporation, and Powertex, Inc. (Powertex, S.C.), a South Carolina corporation. During 1990, petitioner was vice president of Powertex, Powertex Plus, and Powertex, S.C. As vice president of Powertex, petitioner purchased raw materials and hired employees for the Powertex plant in Alburg, Vermont, and dealt with Powertex customers. As vice president of Powertex Plus, petitioner oversaw the daily operation of Powertex Plus' factory in Rouses Point, New York, and communicated with Powertex Plus' suppliers in Montreal. As vice president of Powertex, S.C., petitioner supervised the startup of the company's operations in Charleston, South Carolina.

During 1990, petitioner also owned a 25-percent share in the Podd Trust Associates partnership and the Fort Montgomery Estates partnership. Both partnerships own and lease property in the United States.

On January 1, 1989, petitioner met Ann Cohen (Ms. Cohen), a resident of Fort Lauderdale, Florida. Shortly afterwards, petitioner and Ms. Cohen began dating. Petitioner and Ms. Cohen continued dating throughout 1989 and 1990.

During 1989, Ms. Cohen frequently traveled to Montreal to visit petitioner.  During 1990, Ms. Cohen's ex-husband, Bruce Cohen, sued her for sole custody of their child, Gabrielle, alleging that Ms. Cohen's frequent trips out of the United States resulted in her abandonment of Gabrielle.  The case was later resolved, and Ms. Cohen retained joint custody of Gabrielle.  Afterwards, Ms. Cohen traveled to Montreal less frequently, and petitioner increased the number of trips he made to Fort Lauderdale, Florida.

During 1990, petitioner spent 160 days in Florida, 50 days in South Carolina, and 35 days traveling through other parts of the United States attending trade shows and spent 120 days in Montreal.

On March 26, 1990, Powertex purchased mobile telephone service for petitioner's use at Ms. Cohen's apartment.  Petitioner used a desk and a fax machine at Ms. Cohen's apartment to conduct business while he was in Florida.  During May of 1990, petitioner transported a boat owned by him and his brother, Stephen D. Podd, to Florida and docked it at the marina servicing Ms. Cohen's apartment.  At that time, petitioner obtained an insurance policy covering the boat and listed Ms. Cohen's apartment as his address.  While he was in Florida, petitioner drove a car owned by Powertex.  On August 22, 1990, petitioner obtained a Florida driver's license which identified his address as that of Ms. Cohen's apartment.

During 1990, petitioner shared an office at the family home with his brother Stephen D. Podd.  Petitioner was allotted his own bedroom at the family home in which he kept many personal belongings, including his stereo and hockey equipment. Petitioner also kept two automobiles, both registered in Montreal, in the garage of the family home.  During 1990, petitioner retained his Montreal driver's license and Canadian health insurance.  Petitioner saw a Canadian doctor and a Canadian dentist.  Petitioner also maintained bank accounts at four Montreal banks and membership at a Canadian health club. For the 1990 taxable year, petitioner filed a Canadian resident income tax return.

On January 1, 1991, petitioner and Ms. Cohen became engaged and, on August 16, 1991, they married.  During 1991, petitioner moved his personal belongings, including one of his automobiles, from Canada to Florida.  Afterwards, petitioner began seeing a doctor and a dentist in Florida and joined a health club.  For the 1991 taxable year, petitioner claimed that he was a U.S. resident for income tax purposes and resided in Fort Lauderdale, Florida.

We must decide whether to reconsider our prior opinion that held petitioner was a U.S. resident during 1990 and that he was not a Canadian resident during that year.  Rule 161 provides that a motion for reconsideration must be filed within 30 days after a written opinion has been served unless the Court otherwise

permits.  The granting of a motion for reconsideration rests within the discretion of the Court.  <u>Vaughn v. Commissioner</u>, 87 T.C. 164, 166 (1986).  The Court generally denies such a motion unless unusual circumstances or substantial error is shown.  <u>Haft Trust v. Commissioner</u>, 62 T.C. 145, 147 (1974), affd. on this issue 510 F.2d 43, 45 n.1 (1st Cir. 1975).

In their motion, petitioners contend that this Court should have applied the income tax treaty in effect between the United States and Canada and should have found that, during 1990, petitioner was a Canadian resident for income tax purposes.

The treaty in effect between the United States and Canada governs a taxpayer's residency only if the taxpayer shows that he is a resident of both the United States and Canada.  Convention with Respect to Taxes on Income and on Capital, Sept. 26, 1980, U.S.-Can., art. IV, par. 2, T.I.A.S. No. 11087, 1986-2 C.B. 258, 259, as amended by protocol, June 14, 1983, 1986-2 C.B. 270, and by second protocol, Mar. 28, 1984, 1986-2 C.B. 274 (hereinafter Canada Convention).  The Canada Convention defines a resident as follows:

> 1.  For the purposes of this Convention, the term "resident of a Contracting State" means any person who, under the laws of that State, is liable to tax therein by reason of his domicile, residence, place of management, place of incorporation or any other criterion of a similar nature * * *

<u>Id.</u> Art. IV, par. 1.[2]  During 1990, petitioner was a resident of the United States because he retained resident alien immigration status.  See sec. 7701(b)(1)(A)(i); sec. 301.7701(b)-1(b)(1), Proced. & Admin. Regs.  Petitioners, however, must also show that petitioner was a Canadian resident on the basis of Canadian law. Canada Convention Art. IV, par. 2.

Rule 146 provides that a party who intends to raise a foreign law issue in this Court:

> shall give notice in the pleadings or other reasonable
> written notice.  The Court, in determining foreign law,
> may consider any relevant material or source, including
> testimony, whether or not submitted by a party or
> otherwise admissible.  The Court's determination shall
> be treated as a ruling on a question of law.

The notes to the Rules explain that "This rule is taken almost verbatim from FRCP 44.1."  60 T.C. 1137.  We have interpreted Rule 146 by referring to cases interpreting rule 44.1 of the Federal Rules of Civil Procedure.  See <u>Owens-Illinois, Inc. v. Commissioner</u> 76, T.C. 493, 495-496 (1981).  Although rule 44.1 allows the court to look beyond the representations of the parties regarding foreign law, it does not impose upon the court

---

[2]     On Aug. 31, 1994, the United States and Canada signed a third protocol to the treaty.  A revised protocol was signed by the United States and Canada on Mar. 17, 1995, and replaced the protocol signed during August 1994.  The revised protocol modified the definition of resident contained in Art. IV.  The new definition, however, is not applicable to the year in issue.
     During July 1997, a fourth protocol between the United States and Canada was signed in Ottawa.  On June 8, 1998, the IRS announced that the United States had recently exchanged instruments of ratification for the fourth protocol with Canada. Announcement 98-47, 1998-23 I.R.B. 5.

a duty to independently research foreign law.  See Twohy v. First Natl. Bank, 758 F.2d 1185, 1193 (7th Cir. 1985) (construing rule 44.1 of the Federal Rules of Civil Procedure).  In MacLean v. Commissioner, 73 T.C. 1045, 1053 (1980), this Court refused to hold that a taxpayer who offered no evidence of United Kingdom law was a United Kingdom resident for tax purposes.

In the instant case, petitioners did not introduce or cite any Canadian law on the issue of residency either at trial or in their briefs.  Even in the instant motion for reconsideration, petitioners failed to cite a single Canadian statute, regulation, or case which would be relevant precedent on the issue of residency for Canadian tax purposes.  In their reply brief and in the instant motion, petitioners cite only Interpretation Bulletin IT-221R2 issued by Revenue Canada.  That bulletin represents the position of Revenue Canada, the Canadian tax administrator, and "does not have the binding effect of law".  Mattabi Mines Ltd. v. Minister of Revenue (Ontario) (1988) 53 D.L.R. (4th) 656, 664.  Because petitioners failed to present this Court with any reference to authoritative Canadian law, it was not substantial error for this Court to find that petitioner was not a Canadian resident under Canadian law and therefore refuse to apply the Canada Convention in the instant case.  For that reason, we deny petitioners' motion for reconsideration.

Moreover, even if we were to accept petitioners' contention that petitioner was a Canadian resident under Canadian law and

applied the "tie breaker" rules of the Canada Convention that, as we stated in our prior opinion, would determine petitioner's residence for Federal income tax purposes, it is not clear that petitioners would have established that petitioner was a Canadian, as opposed to a U.S., resident during 1990.  Art. IV, par. 2 of the Canada Convention provides:

> 2.  Where by reason of the provisions of paragraph 1 an individual is a resident of both Contracting States, then his status shall be determined as follows:
>
> > (a)  He shall be deemed to be a resident of the Contracting State in which he has a permanent home available to him; if he has a permanent home available to him in both States or in neither State, he shall be deemed to be a resident of the Contracting State with which his personal and economic relations are closer ([center] of vital interests);
> >
> > (b)  If the Contracting State in which he has his [center] of vital interests cannot be determined, he shall be deemed to be a resident of the Contracting State in which he has an habitual abode;
> >
> > (c)  If he has an habitual abode in both States or in neither State, he shall be deemed to be a resident of the Contracting State of which he is a citizen; and
> >
> > (d)  If he is a citizen of both States or of neither of them, the competent authorities of the Contracting States shall settle the question by mutual agreement.

Accordingly, the Convention provision would require a decision as to whether petitioner had a permanent home available to him in either the United States or Canada, or both of them, during 1990.  The Model Double Taxation Convention on Income and

on Capital, Report of the Organization for Economic Cooperation and Development (OECD) Committee on Fiscal Affairs Art. 4, par. 2 (1977) (Model Treaty), contains substantially the same language as the above-quoted Art. IV., par. 2 of the Canada Convention. The commentary to the Model Treaty (commentary) further explains the requirements of Model Treaty Art. 4.[3]  Because both the United States and Canada were OECD members when the Model Treaty and the commentary were drafted, courts have used the commentary to interpret income tax treaties between the United States and Canada.  See United States v. A.L. Burbank & Co., 525 F.2d 9, 15 (2d Cir. 1975); North W. Life Assurance Co. of Canada v. Commissioner, 107 T.C. 363 (1996); see also Taisei Fire & Marine Ins. Co. v. Commissioner, 104 T.C. 535, 546 (1995) (construing the Convention for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income, Mar. 8, 1971, U.S.-Japan, 23 U.S.T. 969, with reference to the Model Treaty and its commentary).

The commentary to Article 4, pars. 12 and 13 of the Model Treaty explains the term "permanent home" as follows:

> [T]his home must be permanent, that is to say, the individual must have arranged and retained it for his permanent use as opposed to staying at a particular

---

[3]     Both the Model Treaty and the commentary have been subsequently modified by the Model Double Taxation Convention on Income and on Capital, Report of the Organization for Economic Cooperation and Development Committee on Fiscal Affairs (1997). However, Art. 4, par. 2, of the Model Treaty and its commentary have remained substantially the same since 1977.

place under such conditions that it is evident that the stay is intended to be of short duration.
As regards the concept of home, it should be observed that any form of home may be taken into account * * *. But the permanence of the home is essential; this means that the individual has arranged to have the dwelling available to him at all times continuously, and not occasionally for the purpose of a stay which, owing to the reasons for it, is necessarily of short duration * * *.

In the instant case, because the family home in Montreal was available to him continuously during 1990, it appears that petitioner had a permanent home in Canada. Several facts tend to show that the Montreal home was petitioner's permanent home: Petitioner had his own room in the home, where he stored many of his personal belongings; petitioner kept his two cars in the garage at the home; and petitioner maintained an office at the home which he shared with his brother Stephen D. Podd.

Because Ms. Cohen's apartment in Fort Lauderdale was available to petitioner continuously during 1990, however, it also appears that petitioner had a permanent home in the United States. Several facts tend to show that Ms. Cohen's apartment was petitioner's permanent home: Petitioner stayed at Ms. Cohen's apartment on his frequent trips to Florida; petitioner conducted business out of Ms. Cohen's apartment for which he used a desk, a fax machine, and a mobile phone which he had installed in the apartment; petitioner kept a car in Florida and docked his boat at the marina servicing Ms. Cohen's apartment; and petitioner listed the address of Ms. Cohen's apartment as his own address on the insurance policy covering his boat and on his

Florida driver's license.  On the basis of the foregoing, it could be concluded that, during 1990, petitioner had a permanent home in both the United States and Canada.

In such circumstances, the commentary to Article 4, par. 15 of the Model Treaty explains:

> If the individual has a permanent home in both Contracting States, it is necessary to look at the facts in order to ascertain with which of the two States his personal and economic relations are closer. Thus, regard will be had to his family and social relations, his occupations, his political, cultural or other activities, his place of business, the place from which he administers his property, etc.  The circumstances must be examined as a whole, but it is nevertheless obvious that considerations based on the personal acts of the individual must receive special attention.  If a person who has a home in one State sets up a second in the other State while retaining the first, the fact that he retains the first in the environment where he has always lived, where he has worked, and where he has his family and possessions, can, together with other elements, go to demonstrate that he has retained his [center] of vital interests in the first State.

Accordingly, the convention would require a decision as to the location of petitioner's "[center] of vital interest" during 1990.

It is unclear to us where petitioner's "[center] of vital interest" was located during 1990.  Several facts tend to show that petitioner's "[center] of vital interest" was in Canada: Petitioner was born and raised in Canada, and during 1990, petitioner's parents and brother resided in Canada.  Powertex Plus was incorporated in Canada and part of petitioner's activities on behalf of Powertex Plus was communicating with

suppliers in Montreal; petitioner retained his Montreal driver's license and registered his vehicles in Canada; petitioner had Canadian health insurance and was attended by a Canadian doctor and a Canadian dentist; and petitioner maintained bank accounts at Canadian banks and membership at a Canadian health club.

At the same time the record contains facts that tend to show that, during 1990, petitioner's "[center] of vital interest" was in the United States.  Ms. Cohen, whom petitioner married during 1991, lived in Florida; Powertex and Powertex, S.C., were incorporated in the United States, and petitioner retained supervisory power over Powertex, Powertex Plus, and Powertex S.C. facilities in the United States; all of the holdings of Podd Family Associates and Fort Montgomery Estates were in the United States; and petitioner obtained a Florida driver's license. Given petitioner's strong ties to both the United States and Canada during 1990, it appears that, in applying the Canada Convention and the commentary to the Model Treaty, there would be doubt as to which location was petitioner's "[center] of vital interest."

In case of doubt as to the location of the "[center] of vital interest," the commentary to Article 4, par. 17 of the Model Treaty explains:

> In * * * the case where the individual has a permanent
> home available to him in both States, the fact of
> having an habitual abode in one State rather than in
> the other * * * in case of doubt as to where the
> individual has his [center] of vital interests, tips
> the balance towards the State where he stays more

frequently.  For this purpose regard must be had to stays made by the individual not only at the permanent home in the State in question but also at any other place in the same State.

Accordingly, where doubt exists as to an individual's "[center] of vital interest", the commentary tips the balance in favor of the country where the individual stays most frequently. During 1990, petitioner spent only 120 days in Montreal; he spent the remainder of the year in the United States, including 160 days in Florida and 50 days in South Carolina.  Because petitioner spent more time in the United States than in Canada during 1990, it appears that petitioner had a habitual abode in the United States.  On the basis of the analysis above, we think that, even if we had applied the Canada Convention in the instant case, petitioners would not have established that petitioner was a Canadian, as opposed to a U.S., resident for tax purposes during 1990.

We have carefully considered the parties' remaining arguments and find them to be either without merit or unnecessary to reach.  Because petitioners have not shown that this Court committed substantial error in deciding the instant case, we deny petitioners' motion for reconsideration.

On the basis of the foregoing,

An appropriate order

will be issued.