T.C. Memo. 1999-108


UNITED STATES TAX COURT


PIZZA INDUSTRIES, INC. DOMINO'S PIZZA, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 9942-97.                         Filed April 2, 1999.


<u>Paul W. Rowe</u> and <u>Kevin M. Bagley</u>, for petitioner.

<u>Gretchen A. Kindel</u>, for respondent.


MEMORANDUM OPINION


ARMEN, <u>Special Trial Judge</u>:  This matter is before the Court
on petitioner's motion for an award of administrative and
litigation costs under section 7430 and Rules 230 through 233.[1]

---

[1]  Unless otherwise indicated, all sec. references are to
the Internal Revenue Code in effect for the taxable years in

After concessions by the parties,[2] the sole issue for decision is whether respondent has established that respondent's position was substantially justified in the administrative and court proceedings.  We hold that respondent has not.

Neither party requested an evidentiary hearing, and the Court concludes that such a hearing is not necessary for the proper disposition of petitioner's motion.  See Rule 232(a)(2).  We therefore decide the matter before us based on the record that has been developed to date.

Background

Petitioner is a California corporation owned 51 percent by Pizza Park Corporation, an S corporation, (Pizza Park) and 49 percent by Michael Brown (Mr. Brown).  Pizza Park is wholly owned

_____

issue.  However, all references to sec. 7430 are to such section in effect at the time that the petition was filed.  All Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Respondent concedes: (1) Petitioner exhausted its administrative remedies, see sec. 7430(b)(1); (2) petitioner did not unreasonably protract the proceedings, see sec. 7430(b)(3); (3) petitioner substantially prevailed, see sec. 7430(c)(4)(A)(i); and (4) petitioner satisfied the applicable net worth requirement, see sec. 7430(c)(4)(A)(ii).

Initially, there was an issue as to the reasonableness of the claimed costs.  However, petitioner has substantiated the expenses contested by respondent and has conceded that attorney's fees are recoverable only to the extent of $110 per hour (plus any allowable increases for the cost of living).  See sec. 7430(c)(1)(B)(iii), (c)(2)(B).  Because of petitioner's concession regarding the rate of recovery for attorney's fees, the claimed costs have been reduced from $12,005 to $9,477 (13.3 hours for 1997 at the rate of $110 per hour and 63.8 hours for 1998 at the rate of $120 per hour (cost of living adjusted) plus $358 in expenses).  Respondent does not contest the reasonableness of the $9,477 amount.

by Michael Paul (Mr. Paul).

Mr. Paul has a certain level of expertise in developing restaurants. Because of Mr. Paul's expertise, Domino's Pizza Inc. (Domino's) entered into an agreement (the Area Agreement) with Pizza Park on August 1, 1980, giving Pizza Park the exclusive right to develop (including marketing, advertising, and public relations) Domino's franchises[3] within San Diego County, California. Pizza Park agreed to develop a minimum of 35 restaurants within 10 years or risk losing its territorial protection.

The Area Agreement provided Pizza Park with compensation for the development of the Domino's restaurants. During the period of its territorial protection, Pizza Park was entitled to receive 50 percent of the royalty fees (the Compensation) that Domino's received from each restaurant, excluding the restaurant with the highest volume of royalty sales. Domino's was not obligated to pay the Compensation under certain circumstances, including if Pizza Park violated the Area Agreement in any way. Further, upon termination of the Area Agreement for any reason, Pizza Park would no longer be entitled to the Compensation for sales after the effective termination date of the agreement.

---

[3] We may interchangeably refer to a franchise as a restaurant or a store.

The Area Agreement further provided that unless permitted by Domino's, the Area Agreement would be nonassignable. However, a corporation actively managed and wholly owned and controlled by Pizza Park "conducting no business other than the operation of stores" could be allowed to operate Domino's franchises. The rights and responsibilities of a franchisee would be defined under the terms of a standard franchise agreement (the Franchise Agreements)[4]. The Franchise Agreements provided that each franchisee was required to pay Domino's a royalty fee of 5.5 percent based on the store's weekly royalty sales.

Pursuant to the Area Agreement, Mr. Paul initiated the development of the Domino's franchise in the San Diego area, developing 31 franchise stores. Pizza Park owned 20 such franchises. Petitioner, although not a wholly owned subsidiary of Pizza Park, was allowed to own 11 franchise stores. Petitioner's shareholders, Mr. Brown and Mr. Paul (as the sole shareholder of Pizza Park) executed the franchise agreements for the stores owned by petitioner.

During the years in issue, petitioner operated the franchise store with the highest volume in royalty sales within the San Diego area. For that store, petitioner paid 100 percent of the

[4] There are no pertinent differences between the Franchise Agreements here at issue. We therefore refer to the Franchise Agreements in the collective.

royalty fees directly to Domino's.  As for the other stores, petitioner paid 50 percent of the royalty fees due (or 2.75 percent of the royalty sales) to Domino's and the other 50 percent of the royalty fees due (or the other 2.75 percent of the royalty sales) to Mr. Paul as the sole owner of Pizza Park.  The royalty payments to Mr. Paul were reported by petitioner on Forms 1099.

On each of petitioner's corporate income tax returns for 1992 through 1994 taxable years, petitioner claimed a royalty expense deduction equivalent to the royalty fees paid to Domino's and Mr. Paul, or 5.5 percent of petitioner's royalty sales.

Respondent conducted an examination of petitioner's 1992 through 1994 taxable years.  During the administrative audit, petitioner was represented by Paul W. Rowe (Mr. Rowe).  Mr. Rowe provided respondent with copies of the Area Agreement and the Franchise Agreements.  Further, Mr. Rowe provided respondent with a letter from Domino's explaining the reason why payments had been made to both Mr. Paul and Domino's.  The purpose of this practice was to ease the administrative burden on Domino's by eliminating the need for it to issue checks--in effect eliminating the "middleman" with respect to those payments.

After considering the Area Agreement, the Franchise Agreements, and the letter of explanation from Domino's,

respondent determined that petitioner was not entitled to a royalty expense deduction for the portion of the royalty fees paid to Mr. Paul (the Contested Payments).[5] At the time, respondent's theory for disallowing the deduction was not clear. Respondent issued a notice of deficiency for the taxable years 1992 through 1994 on February 25, 1997.

Petitioner filed its petition in this case on May 16, 1997. Subsequently, on December 9, 1997, the Court served notice that this case would be called for trial in San Diego, California, on May 11, 1998. Shortly before that date, on May 4, 1998, Kevin M. Bagley entered his appearance as petitioner's co-counsel. Two days later, on May 6, 1998, the parties placed a telephone conference call to Domino's counsel. During this call, Mr. Bagley asked Domino's counsel regarding the consequences if petitioner failed to make the Contested Payments to Mr. Paul. Domino's counsel advised the parties that Domino's would be entitled to sue petitioner to recover the unpaid royalty. Pursuant to this conversation, respondent conceded the deductibility of the Contested Payments on May 7, 1998, by executing a stipulated decision, which was entered by the Court on May 14, 1998. Thereafter, on August 10, 1998, petitioner

---

[5] Respondent made certain other adjustments that are only computational that result from the disallowance of the royalty expense deduction for the Contested Payments.

submitted its motion for an award of administrative and litigation costs. Two days later, on August 12, 1998, the Court vacated its Decision, recharacterized the form of decision as a stipulation of settlement, and filed petitioner's motion for an award of costs.

Discussion

We apply section 7430 as amended by the Taxpayer Bill of Rights 2 (TBOR 2), Pub. L. 104-168, secs. 701-704, 110 Stat. 1452, 1463-1464 (1996). The amendments made by TBOR2 apply in the case of proceedings commenced after July 30, 1996. See TBOR2 secs. 701(d), 702(b), 703(b), and 704(b), 110 Stat. 1463-1464. Inasmuch as the petition herein was filed on May 16, 1997, the amendments made by TBOR2 apply in the present case.[6]

A. Requirements for a Judgment Under Section 7430

A judgment for administrative costs incurred in connection

---

[6] Congress has amended sec. 7430 twice since the Taxpayer Bill of Rights 2, Pub. L. 104-168, 110 Stat. 1452 (1996). First, Congress amended sec. 7430 in the Taxpayer Relief Act of 1997 (TRA), Pub. L. 105-34, secs. 1285, 1453, 111 Stat. 788, 1038-1039, 1055. Second, Congress amended sec. 7430 in the IRS Restructuring and Reform Act of 1998 (RRA 1988), Pub. L. 105-206, sec. 3101, 112 Stat. 685, 727-730. However, the amendments made by TRA do not apply in the case of proceedings commenced before Aug. 5, 1997, and the amendments made by RRA 1998 apply only to costs incurred more than 180 days after July 22, 1998. The petition herein was filed on May 16, 1997, and petitioner has not claimed costs incurred more than 180 days after July 22, 1998. The amendments made by TRA and RRA 1998 therefore do not apply in the present case.

with an administrative proceeding may only be awarded under section 7430(a) if a taxpayer: (1) Is the "prevailing party"; and (2) did not unreasonably protract the administrative proceeding. See sec. 7430(a) and (b)(3). Similarly, a judgment for litigation costs incurred in connection with a court proceeding may only be awarded if a taxpayer: (1) Is the "prevailing party"; (2) has exhausted his or her administrative remedies within the IRS; and (3) did not unreasonably protract the court proceeding. See sec. 7430(a), (b)(1), (3).

A taxpayer must satisfy each of the respective requirements in order to be entitled to an award of litigation or administrative costs under section 7430. See Rule 232(e). Upon satisfaction of these requirements, a taxpayer may be entitled to reasonable costs incurred in connection with the administrative or court proceeding. See sec. 7430(a)(2) and (c)(1).

To be a prevailing party, the taxpayer must substantially prevail with respect to either the amount in controversy or the most significant issue or set of issues presented and satisfy the applicable net worth requirement. See sec. 7430(c)(4)(A). Respondent concedes that petitioner has satisfied the requirements of section 7430(c)(4)(A). Petitioner will nevertheless fail to qualify as the prevailing party if respondent can establish that respondent's position in the court

and administrative proceedings was substantially justified. See sec. 7430(c)(4)(B).

B.  Substantial Justification

The Commissioner may establish that a position is substantially justified if, based on all of the facts and circumstances and the legal precedents relating to the case, the Commissioner acted reasonably. See Pierce v. Underwood, 487 U.S. 552 (1988); Sher v. Commissioner, 89 T.C. 79, 84 (1987), affd. 861 F.2d 131 (5th Cir. 1988). A position is substantially justified if the position is "justified to a degree that could satisfy a reasonable person". Pierce v. Underwood, supra at 565 (construing similar language in EAJA). Thus, the Commissioner's position may even be incorrect but substantially justified "if a reasonable person could think it correct". Maggie Management Co. v. Commissioner, 108 T.C. 430, 443 (1997).

The relevant inquiry is "whether * * * [the Commissioner] knew or should have known that [his] position was invalid at the onset". Nalle v. Commissioner, 55 F.3d 189, 191 (5th Cir. 1995), affg. T.C. Memo. 1994-182. We look to whether the Commissioner's position was reasonable given the available facts and circumstances at the time that the Commissioner takes his position. See Maggie Management Co. v. Commissioner, supra at 443; DeVenney v. Commissioner, 85 T.C. 927, 930 (1985).

The fact that the Commissioner eventually loses or concedes a case does not establish an unreasonable position.  See Bouterie v. Commissioner, 36 F.3d 1361, 1367 (5th Cir. 1994), revg. on other grounds T.C. Memo. 1993-510; Estate of Perry v. Commissioner, 931 F.2d 1044, 1046 (5th Cir. 1991); Sokol v. Commissioner, 92 T.C. 760, 767 (1989).  However, the Commissioner's concession does remain a factor to be considered.  See Powers v. Commissioner, 100 T.C. 457, 471 (1993), affd. in part, revd. in part and remanded on another issue 43 F.3d 172 (5th Cir. 1995).

As relevant herein, the position of the United States that must be examined against the substantial justification standard with respect to the recovery of administrative costs is the position taken by respondent as of the date of the notice of deficiency.  See sec. 7430(c)(7)(B).  The position of the United States that must be examined against the substantial justification standard with respect to the recovery of litigation costs is the position taken by respondent in the answer to the petition.  See Bertolino v. Commissioner, 930 F.2d 759, 761 (9th Cir. 1991), affg. an unpublished decision of the Tax Court; Sher v. Commissioner, 861 F.2d 131, 134-135 (5th Cir. 1988), affg. 89 T.C. 79 (1987).  Ordinarily, we consider the reasonableness of each of these positions separately.  See Huffman v. Commissioner,

978 F.2d 1139, 1144-1147 (9th Cir. 1992), affg. in part, revg. in part and remanding on other issues T.C. Memo. 1991-144. In the present case, however, we need not consider two separate positions because there is no indication that respondent's position changed or that respondent became aware of any additional facts that rendered his position any more or less justified between the issuance of the notice of deficiency and the filing of the answer to the petition.

Respondent determined in the notice of deficiency that petitioner was not entitled to a royalty expense deduction for the Contested Payments. As we understand respondent's position, respondent would not have disallowed the deduction if petitioner had directly paid the Contested Payments to Domino's. Respondent disallowed the royalty expense deduction based on "the conduct of the parties"; i.e., the fact that petitioner made the Contested payments to Mr. Paul, and respondent's interpretation of the Area Agreement. The deduction was disallowed because respondent determined that petitioner was the implied assignee of the Area Agreement and therefore possessed a fixed and unconditional right to reimbursement for the Contested Payments under that agreement. Finally, respondent concluded that any payments made to Mr. Paul were simply constructive dividends.

Even in light of the fact that petitioner made the Contested

payments to Mr. Paul, we are not convinced that respondent reasonably interpreted the Area Agreement to deny petitioner a deduction for the Contested Payments. In arriving at this conclusion we have considered the rights and obligations of the parties as set forth in the Area Agreement and the Franchise Agreements, including: (1) Under the Area Agreement Pizza Park was the party with the right to receive the Compensation; (2) petitioner was not a party to the Area Agreement; (3) petitioner was not wholly owned by Pizza Park or Mr. Paul, but was 49 percent owned by another individual; (4) even Pizza Park's right to receive the Compensation was conditional; (5) petitioner's obligation to pay 5.5 percent of its royalty sales as a royalty fee was unconditional; and, finally, (6) petitioner in fact satisfied this obligation.

Petitioner's obligation to Domino's for the royalty fees arose under the Franchise Agreements. Pursuant to the Franchise Agreements, each store operated by petitioner was unconditionally required to pay 5.5 percent of its royalty sales proceeds to Domino's as a royalty. Respondent did not have any indication that petitioner was relieved of this obligation. Although petitioner did not pay the entire 5.5 percent royalty fee to Domino's, respondent was provided with a letter from Domino's counsel explaining the reason for this (albeit informal)

arrangement.  A Corporation is not precluded from deducting an otherwise deductible royalty expense because the fee is paid to a shareholder as opposed to a third party.  Cf. Podd v. Commissioner, T.C. Memo. 1998-231 (taxpayer entitled to deduct a royalty fee paid to a shareholder to the extent the royalty fee was reasonable), supplemented by T.C. Memo. 1998-418.

Respondent contends that it was reasonable for respondent to treat petitioner as the implied assignee of the Area Agreement because Domino's ignored the separate identity of petitioner from Pizza Park for certain purposes.  (Specifically, respondent refers to the fact that in determining the store with the highest volume in sales, all stores owned by both petitioner and Pizza Park were pooled.)  Respondent surmised therefore that for the stores owned by petitioner, petitioner was entitled to receive the Contested Payments as reimbursement.  Because a taxpayer is not entitled to deduct an expense for which there is a fixed and unconditional right to reimbursement, respondent disallowed the loss.  However, respondent's position ignores the terms of the parties' agreements.

First, we are not persuaded that respondent reasonably determined petitioner to be the implied assignee of the Area Agreement and therefore entitled to the Compensation.  Petitioner was never a party to the Area Agreement that provided for the

Compensation.  Petitioner was only a party to the 11 franchise agreements under which petitioner operated its stores and was required to pay a 5.5-percent royalty fee.  It is not clear that the fact that Domino's, a third party, chose to treat petitioner and Pizza Park as members of one "group"--the "Paul Group"--for one purpose otherwise affected the rights and obligations of petitioner (and its shareholders) and Pizza Park (and its shareholder) for other purposes.

Petitioner was a separate corporate entity possessing a different identity from Pizza Park and Mr. Paul.  Petitioner was not solely owned by Pizza Park or Mr. Paul but was also owned by Mr. Brown, a 49 percent shareholder.  There was no reason for respondent to conclude that Mr. Brown would be willing to allow petitioner to pay dividends to Mr. Paul without making appropriate adjustments on its corporate books.  Nor was there any indication that petitioner's corporate identity was in any manner ignored.  Finally, petitioner appropriately filed Forms 1099 reporting the payments made to Mr. Paul.  Therefore, respondent has failed to establish that respondent reasonably determined petitioner to be the implied assignee of the Area Agreement.

Second, even if petitioner impliedly become an assignee of the Area Agreement, the right to receive the Compensation was not

a "fixed" or "unconditional" right to receive reimbursement. Whereas under the Area Agreement the right to receive the Compensation was conditional and revocable, the obligation of a franchise owner, such as petitioner, under a franchise agreement to pay the 5.5-percent royalty fee was unconditional. Therefore, there appears to be no fixed or unconditional right to receive reimbursement for the Contested Payments.

Based on the forgoing, we are not convinced that respondent reasonably determined that petitioner was entitled to a fixed or unconditional right to receive reimbursement as an implied assignee of the Area Agreement.

Finally, we have considered that respondent conceded this case based on a single telephone conversation with Domino's counsel. Upon being informed by Domino's counsel that Domino's would be entitled to sue petitioner for recovery if petitioner failed to make the Contested Payments to Mr. Paul, respondent immediately conceded the deficiencies. We do not understand why respondent did not seek to make this inquiry before issuing a notice of deficiency. Respondent was not precluded from contacting Domino's, a third party, to confirm respondent's theory before issuing a notice of deficiency. Respondent was aware of the basis for disallowing the deduction and should have taken minimal steps to confirm or negate respondent's theory

before issuing a notice of deficiency.

Respondent claims that it was petitioner's burden to prove that it was entitled to the deduction.  However, petitioner provided respondent with copies of the agreements at issue.  Respondent's determination was simply based on respondent's interpretation of those agreements.  At the time, respondent's theory for disallowing the deduction was not completely clear, and hence petitioner could do nothing further to substantiate the claimed deduction.

In light of the foregoing, respondent has failed to establish that respondent's position in the administrative and court proceedings was substantially justified.

To reflect our disposition of the disputed issues and the parties' concessions,

<u>An appropriate order and decision will be entered</u>.