T.C. Memo. 1996-193


UNITED STATES TAX COURT


EUGENE K. FRISCONE AND NICOLE FRISCONE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 7412-94.                    Filed April 22, 1996.


<u>Kenneth J. Freeman</u>, for petitioners.

<u>Jeffry J. Erney</u>, for respondent.


MEMORANDUM OPINION

RAUM, <u>Judge</u>:  The Commissioner determined deficiencies in
petitioners' 1990 and 1991 income taxes, pursuant to sections
61(a)(3) and 1001(a),[1] in the amounts of $10,307 and $1,817,

---

[1] Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for the years in issue, and
Rule references are to the Tax Court Rules of Practice and
Procedure.

respectively. The principal issue is whether, following an agreement between husband and wife incorporated in a divorce decree, the gain on the subsequent sale of certain stock theretofore owned by the husband is to be attributed solely to him or only that portion awarded to him by the divorce decree. We hold that, in the circumstances of this case, he is chargeable only with that portion.

Eugene K. and Nicole Friscone, petitioners, resided in Strongsville, Ohio, at the time their petition in this case was filed. Prior to his marriage to Nicole, Eugene (hereinafter sometimes referred to as petitioner) was married to Linda Friscone. On November 17, 1988, Eugene and Linda Friscone entered into an Agreed Judgment Entry of Divorce. Eugene was the plaintiff in the divorce proceedings. The defendant Linda filed a counterclaim, and the plaintiff withdrew his complaint. The litigation proceeded with Linda as the moving party, notwithstanding that she continued to be referred to as the defendant and Eugene as the plaintiff.

Both husband and wife were represented by counsel, and the parties entered into an in-court agreement that was adopted by the court and set forth in the divorce decree. The divorce decree found that the "principal remaining assets of the marriage" consisted of the husband's 50-percent interest in Maintenance Unlimited, Inc. (MUI), evidenced by his ownership of 150 shares of its stock, and a 25-percent interest in two car

washes, one a corporation and the other a partnership.[2]  The remaining 150 shares of MUI were owned by Eugene's brother Joseph.  It would appear from the record that Eugene and Joseph had come to a parting of the ways.  Both Joseph and MUI were made parties defendant in the divorce litigation.

The decree found that on or about February 14, 1985, Eugene and his brother Joseph "entered into a Buy-Sell Agreement with respect to Plaintiff's [Eugene's] shares of stock in Defendant Maintenance Unlimited, Inc."  The decree further found that Eugene's employment with MUI was terminated on August 8, 1986, and that since that time he "has been unable to negotiate a satisfactory resolution of the sale or redemption" of that business interest.  The decree then granted the divorce, and provided for the "division of property" of the "principal remaining assets of the marriage" as follows:

> The Court further finds that the principal remaining assets of the marriage consist of Plaintiff's business interests in Defendant Maintenance Unlimited, Inc., of which Plaintiff owns fifty percent (50%) of the issued and outstanding stock, and [the two car washes] * * *.

> \* \* \* \* \* \* \*

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiff [Eugene Friscone] is hereby awarded, as division of property, the following assets:

---

[2] The car washes appear to be of relatively minor importance here, and nothing in controversy is concerned with them in this case.  Both were parties defendant in the divorce proceedings.

1.  Forty-five percent (45%) of any and all proceeds derived from the sale of Plaintiff's shares of stock in Defendant Maintenance Unlimited, Inc., as well as forty-five percent (45%) of all proceeds derived from the sale of Plaintiff's interest in [the two car washes] * * *.

       *     *     *     *     *     *     *

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Defendant Linda D. Friscone is hereby awarded, as division of property, the following assets:

1.  Fifty-five percent (55%) of any and all proceeds derived from the sale of Plaintiff's shares of stock in Defendant Maintenance Unlimited, Inc., also a Defendant herein, as well as fifty-five percent (55%) of all proceeds derived from the sale of Plaintiff's interest in [the car washes] * * *.

       *     *     *     *     *     *     *

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that Plaintiff shall immediately notify Defendant Maintenance Unlimited, Inc. of Plaintiff's intention to invoke the terms of the Buy-Sell Agreement.

On March 30, 1990, petitioner and MUI (through Joseph) finally entered into an agreement in which petitioner agreed to sell and MUI agreed to purchase (redeem) the 150 shares of MUI stock owned by petitioner, leaving Joseph as the 100-percent owner of MUI.  In exchange for the 150 shares of stock, MUI agreed to give petitioner the following consideration:  $23,000 in cash; a long-term note in the amount of $143,039.25; and the cancellation of petitioner's outstanding debt to MUI in the amount of $31,200.  The long-term note received by petitioner, dated April 3, 1990, was for a term of 180 months and carried an interest rate of 10 percent.

Petitioners' 1990 Federal individual income tax return included only 45 percent of the principal received on the long-term note. The gain was determined under the installment method. The return failed to include, as part of the computation of gain, the $23,000 cash received, the debt from which petitioner was relieved in the amount of $31,200, and the remaining 55 percent of the sales proceeds. Petitioners' 1991 return similarly included only 45 percent of the principal payments on the long-term note in the computation of gain under the installment method. Petitioners' returns for 1990 and 1991 each included only 45 percent of the interest income received on the long-term note.

During 1990, petitioner paid Linda Friscone $17,798.02 from the proceeds he received on the sale of the MUI stock. During 1991, petitioner paid Linda Friscone $10,041.16 from the proceeds he received on the sale of the MUI stock.

Section 61(a)(3) includes in gross income "all income from whatever source derived, including * * * Gains derived from dealings in property". Section 1001(a) defines the amount of gain from sale or other disposition of property as "the excess of the amount realized therefrom over the adjusted basis". The amount realized also includes "the amount of liabilities from which the transferor is discharged as a result of the sale or disposition." Sec. 1.1001-2(a)(1), Income Tax Regs. Section 1001(c) requires that "Except as otherwise provided in this

subtitle, the entire amount of the gain or loss * * * on the sale or exchange of property shall be recognized."

Petitioners' brief does not dispute the Commissioner's determination that the $23,000 cash and the discharge of Eugene's $31,200 indebtedness to MUI were includable in the computation of petitioners' capital gain for 1990. Nor is there any controversy over petitioners' right to use the installment method. However, petitioners do challenge the Commissioner's determination that the entire amount of the redetermined sales proceeds was reportable on their 1990 return. They contend that they are liable for the taxes on only 45 percent of the proceeds of the sale. They also object to being charged with the entire amount of the interest received in 1990 on the long-term note, and contend that they are accountable for only 45 percent of that amount. They take like positions with respect to 1991 to the extent that capital gain from the sale of MUI stock and interest on the long-term note are involved.

The Government argues that petitioner was the owner of the entire 150 shares of MUI and is chargeable with all the gain realized. The difficulty with the Government's position is that it fails to recognize just what the decree of the divorce court covered. The court found that "the principal remaining assets of the marriage consist of Plaintiff's [Eugene] business interests in Defendant Maintenance Unlimited, Inc., of which Plaintiff [Eugene] owns fifty percent (50%) of the issued and outstanding

stock," and a 25-percent interest in two (2) car washes. The court then further decreed that it "awarded [to Eugene], as division of property, the following assets: 1. Forty-five percent (45%) of any and all proceeds derived from the sale of Plaintiff's [Eugene's] shares of stock in Defendant Maintenance Unlimited, Inc." (Emphasis added.)

Plainly, the court was providing for a division of the assets of the marriage. And it is obvious that it cast the provisions of the decree in terms of percentages of the proceeds of sale of Eugene's stock interest in MUI rather than in terms of percentages of the stock itself because there was outstanding a buy-sell agreement between Eugene and his brother, Joseph. But the substance of the decree, in providing for the division of property, was to award Linda 55-percent ownership of the stock. That this is so is supported by the following provision in the in-court agreement between Eugene and Linda as incorporated in the divorce court's decree:

> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that in the event that the sale of Plaintiff's business interests as set forth hereinabove constitutes a taxable event, Plaintiff and Defendant Linda D. Friscone shall each be liable and responsible for payment of any such taxes due in proportion to the share of the proceeds that each receives; and, accordingly, Plaintiff shall be responsible for payment of forty-five percent (45%) of any such tax so generated, and Defendant Linda D. Friscone shall be responsible for the payment of fifty-five percent (55%) of any such tax so generated.

We recognize that although neither the parties nor the State court can authoritatively construe Federal tax law, the agreement as to Federal taxes may nevertheless throw strong light on what was intended in the agreement and decree with respect to the division of the marital property. This is particularly so since section 1041(a) provides for nonrecognition of gain or loss on a transfer of property incident to a divorce "to (or in trust for the benefit of) a spouse," and section 1041(b)(2) provides that the basis of the transferee "shall be the adjusted basis of the transferor."[3]

It obviously appeared more convenient to cast the divorce decree in terms of percentages of the proceeds to be received, since a satisfactory resolution of the details of the sale under the buy-sell agreement had not yet been negotiated. Although the

---

[3] Sec. 1041. TRANSFERS OF PROPERTY BETWEEN SPOUSES OR INCIDENT TO DIVORCE.

(a) General Rule.--No gain or loss shall be recognized on a transfer of property from an individual to (or in trust for the benefit of)--

(1) a spouse, or

(2) a former spouse, but only if the transfer is incident to the divorce.

(b) Transfer Treated as Gift; Transferee Has Transferor's Basis.

\* \* \* \* \* \* \*

(2) the basis of the transferee in the property shall be the adjusted basis of the transferor.

decree did not order a transfer of title to 55 percent of the shares directly to Linda, it plainly provided, in the division of assets of the marriage, for a transfer to her of beneficial ownership of the stock. See Cepeda v. Commissioner, T.C. Memo. 1994-62 (to determine ownership for tax purposes, "a court must consider * * * when the benefits and burdens of the property, or the incidents of ownership, were acquired"), affd. without published opinion 56 F.3d 1384 (5th Cir. 1995). When the divorce decree became final, Linda acquired both the benefits-- entitlement to 55 percent of the proceeds from the sale--and the burdens--the obligation to pay taxes on 55 percent of the proceeds--of stock ownership. Cf. Serianni v. Commissioner, 80 T.C. 1090 (1983), affd. 765 F.2d 1051 (11th Cir. 1985). Since she was the legal, if not the record, owner of 55 percent of the shares, petitioner was acting on her behalf to the extent of her beneficial ownership in the 150 shares of MUI when the stock was sold to MUI. Petitioner was acting on his own behalf with regard only to the 45-percent interest awarded to him in the divorce decree.

We give effect to the substance of the transaction, rather than its form,[4] and hold that petitioner is chargeable with only

---

[4] See Griffiths v. Helvering, 308 U.S. 355, 357 (1939) ("We cannot too often reiterate that 'taxation is not so much concerned with the refinements of title as it is with actual command over the property taxed--the actual benefit for which the tax is paid.'"); Houchins v. Commissioner, 79 T.C. 570, 589

(continued...)

45 percent of the gain realized on the sale of the MUI stock.
The obligation as to the remaining 55 percent falls on Linda.

<u>Decision will be entered</u>

<u>under Rule 155</u>.

---

[4](...continued)
(1982) ("It is well established that the economic substance of a transaction, rather than its form, controls for Federal tax purposes."); <u>Kraut v. Commissioner</u>, 62 T.C. 420, 428 (1974) ("It is a cardinal rule that, in characterizing a transaction for purposes of taxation, we are obliged to look beyond the form in which the parties have chosen to cast it and to draw our conclusions from that which we perceive to be the substance of the matter."), affd. 527 F.2d 1014 (2d Cir. 1975).