Michael J. WALKER, et al.

v.

The UNITED STATES.

No. 02–1454T.

United States Court of Federal Claims.

April 13, 2005.

Dana R. Taylor, Portland, OR, for the plaintiff.

Elizabeth D. Seward, Washington, DC, with whom was Assistant Attorney General Eileen J. O'Connor, for the defendant. David Gustafson, Department of Justice, of counsel.

## OPINION

YOCK, Senior Judge.

Before the Court is Plaintiff's Motion for Attorney Fees, pursuant to 26 U.S.C. § 7430 (2000). The motion has been fully briefed, and the Court finds oral argument is unnecessary. For the reasons set forth below, the Plaintiff's Motion for Attorney Fees is DENIED.

### Background

The facts underlying the instant motion are set forth in detail in the United States Tax Court's opinion in *Walker v. Commissioner*, 86 T.C.M. (CCH) 683, 2003 WL 22883635 (2003). For convenience, the operative facts are cited in brief, below.

A. Dissolution of Bert and Claudia Walker's Marriage and Distribution of Marital Assets.

Mr. Bert Walker (Bert) and Ms. Claudia Walker (Claudia) terminated their thirty-year marriage, effective December 20, 1996. At the time of their divorce, their marital property was worth several million dollars. Among their assets, Bert and Claudia jointly held a 50–percent interest in a parcel of land, known as the "Happy Valley property." Pursuant to the terms of their marital settlement agreement, their joint ownership of the Happy Valley property was converted to a tenancy-in-common, with each ex-spouse receiving a 25–percent interest in the Happy Valley property. In addition, the marital settlement agreement required Bert to pay Claudia an equalizing money judgment of $500,000. This equalizing money judgment was entered in favor of Claudia on November 20, 1996, and was secured by a note and a trust deed on several pieces of realty that were conveyed to Bert by the marital settlement agreement.

B. The Happy Valley Property Transactions

At some point in early 1997, the Happy Valley property was listed for sale with a realtor; Bert Walker served as the realtor's primary contact person with regard to the listing. Thereafter, in September of 1997, Bert and Claudia executed a document entitled "Settlement Agreement," which contained the following language:

I Claudia F. Walker hereby agree to accept from Bert Walker his 25% interest in real property T1.2000 and T1.2090—Happy Valley, Oregon.

This assignment will credit Bert Walker his 1/4 interest being approximately $213,500 less approximately $60,000 Capital Gains Tax; leaving $153,500 credit towards the divorce settlement.

Bert transferred his interest to Claudia via quitclaim deed, which he signed and had notarized on September 26, 1997. This deed was duly recorded on October 2, 1997.

On September 30, 1997, Claudia signed an earnest money agreement with a prospective buyer, Parker Development Northwest, Inc. (Parker Development).[1] The sale to Parker Development went through, and Claudia signed the bargain and sale deed conveying her interest on October 10, 1997. Parker Development recorded the deed in November of 1997, and the Seller Final Closing Statement stated that the closing date for the sale was November 5, 1997. Bert Walker did not sign the earnest money agreement, and was not referenced in the closing statement.

C. 1997 Tax Returns of Bert and Claudia Walker

Both Bert and Claudia Walker had their 1997 tax returns prepared by the same accountant, Kelly Coburn (Coburn). They each reported the gain on the sale of "their" 25–percent interest in the Happy Valley property using the installment method. It appears

1. The Walker Family Irrevocable Trust, as owner of 50–percent of the Happy Valley property, signed the earnest money agreement through its trustee on October 1, 1997.

from the record that neither party informed Coburn that Bert had quitclaimed his interest in Happy Valley to Claudia prior to the November 5, 1997 sale—the taxable event.

In January 2000, approximately one and a half years after Bert Walker filed his 1997 tax return, he presented a copy of the settlement agreement and quitclaim deed to Coburn, and asked Coburn to amend his 1997 return to remove the gain on the sale of the Happy Valley property from his taxable income. Mr. Walker filed this amended return in March 2000. Accordingly, Coburn informed Claudia Walker that Bert had amended his 1997 return. She did not amend her 1997 return.

Bert Walker passed away on August 31, 2001. His refund claim was then pending; plaintiffs own his interest in the claim by virtue of an assignment made by Mr. Walker's estate. On July 24, 2002, defendant disallowed plaintiffs' refund claim, and concurrently issued Claudia Walker a notice of deficiency with respect to her 1997 and 1998 income taxes.[2] Additionally, Claudia Walker was assessed accuracy-related penalties because the IRS attributed her 1997 and 1998 underpayment to her negligence or disregard of the rules or regulations under Section 6662(b)(1), or alternatively, to a substantial understatement of income tax under Section 6662(b)(2).

## D. Procedural Posture

Prior to the July 24, 2002 disallowance of Bert Walker's 1997 refund claim, the IRS, Bert, and Claudia Walker, via counsel, entered into discussions with the IRS Appeals Officer, Mr. Calvin Crandall. The parties could not reach a resolution. Claudia Walker maintained, *inter alia*, that Bert arranged the sale of the property, her signatures on any documents of transfer or sale were perfunctory, and that the sale of the property was at his request and benefitted him by partially relieving him of money due under the equalizing money judgment. She also

argued that they had a collateral agreement whereby he would pay all of the capital gains associated with the 25–percent interest in Happy Valley that Bert had owned upon the dissolution of their marriage. Bert, and later plaintiffs, contended that Bert's interest in Happy Valley terminated prior to the sale to Parker Development—the taxable event. Consequently, Mr. Crandall found that the IRS was in a whipsaw position as between the Walkers, and accordingly ruled against both parties.

Claudia Walker was the first to litigate her claim. Approximately two months after Claudia filed her claim in the United States Tax Court, plaintiffs filed their claim for the 1997 refund in this Court on October 22, 2002. The defendant informed plaintiffs informally that, if Claudia Walker lost her claims in the Tax Court, they would concede plaintiffs' 1997 refund claim. Thereafter, the parties jointly stipulated to this Court that the decision in Claudia's case could have a significant bearing on the outcome of the action before this Court, leading to a resolution of the matter without the Court's intervention. Thus, this Court suspended proceedings pending the Tax Court's decision.

On December 8, 2003, the Tax Court issued its opinion in *Walker v. Commissioner*, 86 T.C.M. (CCH) 683 (2003), holding in favor of the Government. Shortly thereafter, the Government conceded its case before this Court. Now, plaintiffs argue that they are entitled to attorney fees and costs under Section 7430, because they are the prevailing party in this action, and they allege that the Government's position lacked substantial justification.[3]

### Discussion

A taxpayer's means of recovering administrative and litigation costs is governed exclusively by 26 U.S.C. § 7430. Under Section 7430, a taxpayer may establish that he is entitled to an award of *reasonable* administrative and litigation costs if the taxpayer:

---

2. As discussed in greater detail when addressing the costs sought by the plaintiffs, the 1997 tax year is the only tax year implicated by the motion before this Court.

3. The plaintiffs styled this action as "Plaintiff's Motion for Attorney Fees," yet, a review of the body of the plaintiffs' memorandum of law in support of their motion reveals that plaintiffs seek a wide range of administrative and litigation costs, as provided under Section 7430.

(1) is the prevailing party, (2) has exhausted available administrative remedies, and (3) has not unreasonably protracted administrative or judicial proceedings. 26 U.S.C. § 7430(a), (b)(1),(3). In the motion at bar, the defendant concedes both that the plaintiffs have exhausted available administrative remedies, and also that the plaintiffs have not acted to unreasonably protract the proceedings. The defendant instead opposes the instant motion on the grounds that the plaintiffs are not entitled to be treated as a prevailing party because: (1) the Government's position was substantially justified, and (2) they have not established that the estate of Bert Walker satisfies the net worth requirements set forth in Sections 7430(c)(4)(A)(ii) and 7430(c)(4)(D)(i)(I). As an additional basis to defeat this claim, the defendant alleges that the plaintiffs failed to establish the reasonable, recoverable administrative and litigation costs. The Court shall explore each of these contentions below.

A. The Government's Justification for its Position

In an action under Section 7430, "[a] party shall not be treated as the prevailing party * * * if the United States establishes that the position of the United States in the proceeding was substantially justified." 26 U.S.C. § 7430(c)(4)(B)(i). Stated differently, plaintiffs cannot prevail on the pending motion if the Government's position was:

> "justified in substance or in the main"—that is, justified to a degree that could satisfy a reasonable person. That is no different from the "reasonable basis both in law and fact" formulation adopted by the Ninth Circuit and the vast majority of other Courts of Appeals that have addressed this issue. To be "substantially justified" means, of course, more than merely undeserving of sanctions for frivolousness; that is assuredly not the standard for Government litigation of which a reasonable person would approve.

*Pohl Corp. v. United States,* 29 Fed.Cl. 66, 71 (1993) (discussing definition of "substantially justified" under Section 7430) (quoting *Pierce v. Underwood,* 487 U.S. 552, 565–66, 108

S.Ct. 2541, 101 L.Ed.2d 490 (1988) (citations omitted)).

■ It is well settled that the defendant's concession of a claim does not establish that its position lacked substantial justification, without more. *Maggie Mgmt. Co. v. Comm'r,* 108 T.C. 430, 433, 1997 WL 311818 (1997). Additionally, the Government may properly assert conflicting positions as between multiple taxpayers with regard to a single transaction in order to protect the Government's ability to tax the income generated by the transaction. *See, e.g., Bouterie v. Comm'r,* 36 F.3d 1361, 1373 (5th Cir.1994); *Doggett v. Comm'r,* 66 T.C. 101, 103, 1976 WL 3604 (1976). This situation is not uncommon when ex-spouses each argue that their ex-spouse is liable for the tax on a single transaction, placing the Government in a whipsaw position as between the parties. *See, e.g., Kean v. Comm'r,* 86 T.C.M. (CCH) 392, 2003 WL 22172154 (2003); *Doggett,* 66 T.C. 101, 1976 WL 3604. Nonetheless, the Government is not permitted to adopt the whipsaw stance in all situations involving disputes between ex-spouses. *Human v. Comm'r,* 75 T.C.M (CCH) 1814 (1998) (holding that the Government's assertion of whipsaw position was not substantially justified where the plaintiff's ex-husband attempted to deduct a lump-sum alimony payment from his income as periodic alimony, when the law patently favored the plaintiff and there was a dearth of evidence to support the ex-husband's claim).

■ Analysis of the reasonableness of the Government's position may include both the Government's conduct in the administrative proceedings, and also the Government's litigation conduct. *Weiss v. Comm'r,* 850 F.2d 111 (2d Cir.1988). In this instance, this Court has before it relevant evidence of the Government's assessment of its position prior to issuing the July 24, 2002 notice of claim disallowance, as well as the contentions made to the Government by both Claudia and Bert Walker that informed the defendant's assessment. Furthermore, this Court shall also consider the findings of the Tax Court in *Walker,* 86 T.C.M. (CCH) 683 (2003).

1. The defendant's justification for denying the plaintiffs' 1997 refund claim.

At the heart of the plaintiffs' position regarding the defendant's alleged lack of substantial justification to disallow the plaintiffs' refund claim for 1997 lies its assertion that the facts known to the defendant prior to the notice of disallowance, and the statutes relevant thereto, fail to provide a reasonable basis for the Government to conclude that Bert Walker might be liable for the tax on 25–percent of the gain on the sale of the Happy Valley property. Therefore, this Court shall first set forth the relevant facts raised by Bert and Claudia Walker, and then analyze the reasonableness of the Government's conclusions regarding the legal implications of those facts.

(a) Facts cited by Claudia
and Bert Walker.

Supporting the plaintiffs' position that the facts known to the Government could not reasonably justify the Government's position, the plaintiffs offer the correspondence from both Claudia's and Bert's counsel to the IRS Appeals Officer, Mr. Calvin Crandall, sent after a November 7, 2001 meeting with Mr. Crandall.

In the first letter Mr. Walker's counsel sent to Mr. Crandall, dated December 21, 2001, counsel presented the following facts: (1) Bert transferred his interest in Happy Valley to Claudia by deed on September 26, 1997, and such transfer was a nontaxable event as it was "incident to a divorce," pursuant to IRC § 1041(c); (2) Claudia's attorney received guidance from two accountants five months prior to the transfer from Bert to Claudia, who stated that "it is clear" that Bert's transfer to Claudia would relieve Bert of liability for any gains on the property arising from a subsequent sale to a third party; and (3) Claudia sold the property to a third party after Bert transferred his interest to her.

Claudia's counsel responded by proffering additional facts. First, Claudia had not agreed to accept any additional tax liabilities that would diminish her $500,000 settlement. Additionally, the property was in the process of being sold as early as April 1997—several months before Bert transferred his interest to Claudia. Further, Bert, not Claudia, had identified Parker Development as a buyer. Also, Claudia's counsel argued that Bert orchestrated the sale, and Claudia's participation in the process was limited to signing documents when Bert told her to do so. Moreover, the quitclaim deed from Bert to Claudia was not recorded until October 2, 1997—after Claudia had signed the earnest money agreement with Parker Development; thus, counsel claimed that the key to the transaction was that the transfer from Bert occurred after the property was already in the process of being transferred to Parker Development. Finally, Claudia's counsel pointed to Bert's own belief that he was liable for the tax, substantiated by his payment of the tax on his 1997 return.

Bert's counsel sent a second letter, dated January 2, 2002. Therein, counsel for Bert argued that, assuming *arguendo* that all of the facts presented by Claudia were true, in order for the sale to Parker Development to be a nonrecognition transaction for Claudia pursuant to Section 1041, an agreement to treat it as such would have to be in writing. Absent a written agreement, the transfer from Bert to Claudia was the event that partially satisfied his debt to her under the property settlement, not its subsequent sale to a third party.

(b) The Government's decision to
adopt a whipsaw position.

Prior to the IRS Office of Appeals' decision to deny the plaintiffs' claim for a refund of the 1997 taxes paid on the gain from the sale of the Happy Valley property, the defendant authored an Appeals Case Memo ("memo"). D's Br. in Opp. to P's Mot., Ex. 5. The memo set forth a detailed account of the facts cited by Bert and Claudia Walker, and then analyzed the relative merits of the legal arguments made by Bert and Claudia, stating:

In my opinion, the form of the sale favors Bert. I believe the taxpayer's [sic] are bound by the form of their transaction absence [sic] a showing of strong proof showing that the form was incorrect. [Danielson Rule—See *Comm. v. Danielson*, 378 F.2d 771; and see *Cubic Corp.*, DC Calif., 6/25/74, *aff'd per cur.* 541 F.2d

829 (CA–9, 1976) where the court acknowledged the rule in the 9th CA.][sic]It seems to me that in order for Claudia to prevail that she must show there was no accord in the transaction as she was deceived, under duress, or there is strong proof that the form of the transaction is incorrect. Equity may be on her side, but the structure of the transaction favors Bert. I believe that the court will be hard pressed to overcome the form of the transaction.

I believe that Bert's estate has fact hazards associated with their case, as Bert is not available to testify or to challenge the testimony of Claudia. Claudia has handwritten notes of her understanding of what was happening. Whether those notes are admissible or not depends on whether the written documents between the parties are clear and unambiguous. If the documents are ambiguous, then the court might look beyond those documents and consider Claudia's oral testimony and handwritten notes of their discussions and her understanding of what was being done.

D's Br. in Opp. to P's Mot., Ex. 5, at 4.

As the foregoing establishes, the Government believed that the facts favored plaintiffs, but did not feel that either side had an unambiguous right to a determination in their favor. Thus, the Government concluded it was necessary to adopt a whipsaw position in order to protect its interest. Whether or not this position was reasonable, however, requires the Court to view the Government's conclusions in light of applicable law. As primary support for their position that the Government adopted an unreasonable stance, the plaintiffs cite the Tax Court's decision in *Walker v. Commissioner*, 86 T.C.M. (CCH) 683 (2003). Furthermore, the defendant similarly relies on the Tax Court decision, arguing that the Tax Court's opinion makes it clear that Claudia's position—while held improper—was not wholly lacking a reasonable legal basis. As a result, this Court turns its attention to the Tax Court's findings.

2. The decision in the related case of *Walker v. Commissioner*, 86 T.C.M. (CCH) 683 (2003).

Claudia presented two arguments to the Tax Court. First, she argued that the transfer of the Happy Valley property to Parker Development was done at the request of, and therefore on behalf of, Bert Walker. Therefore, the substance of the transaction fell within the scope of the Temporary Income Tax Regulation section 1.1041–1T(c), Q & A–9, which permits nonrecognition of gain treatment for "transfers of property to third parties on behalf of a * * * former spouse * * *." Temp. Tax. Reg. § 1.1041–1T(c), Q & A–9. Second, "[a]s a backstop to her substance over form argument," Claudia asserted that her 1997 and 1998 tax returns were filed in accordance with an agreement between she and Bert. *Walker*, 86 T.C.M. (CCH) 683, 686 (2003).

Addressing first Claudia's substance over form argument, the Tax Court noted that "[a]s a general rule, a taxpayer is bound by the form of the transaction that the taxpayer has chosen." *Id.* (citations omitted). After discussing the evidence regarding the form of the transaction between Bert and Claudia (the quitclaim deed), and the discussions between Claudia's lawyer and accountant that predated the transaction, the Tax Court determined that Claudia could not disavow the form of the transaction. So finding, the Tax Court next discussed the application of Section 1041 to the Happy Valley transactions.

Regarding Bert's transfer of his interest in Happy Valley to Claudia via quitclaim deed, the Tax Court found that the transaction was "incident to a divorce" under Section 1041(a)(2), and therefore qualified for nonrecognition of gain treatment. Next, addressing the transfer of Happy Valley to Parker Development, the Tax Court determined that Temporary Income Tax Regulation section 1.1041–1T(c), Q & A–9 did not apply to the sale. Reasoning that Bert's transfer of his interest to Claudia was the transaction that satisfied his obligation to Claudia under the property settlement, the Tax Court found that Claudia's subsequent transfer inured solely to her benefit. Thus, the court held that Claudia's sale of Happy Valley to Parker Development did not qualify for nonrecognition of gain treatment pursuant to Section 1041.

Turning its attention to Claudia's claim that she and Bert had each agreed to pay the capital gains for the 25–percent interest in Happy Valley that they had separately held prior to the execution of the quitclaim deed from Bert to Claudia, the Tax Court found that any such agreement that may have existed was without effect. In support of her position, Claudia relied on *Friscone v. Commissioner*, 71 T.C.M. (CCH) 2837, 1996 WL 189941 (1996). In *Friscone*, the plaintiff's divorce decree granted him full legal title to certain shares of stock. The decree provided, however, that proceeds from the sale of the stock would be apportioned between the ex-spouses. The *Friscone* court determined that, although the title of the stock was in the plaintiff's sole name, he was only required to pay capital gains on the portion of the proceeds allocated to him under the divorce decree. Applying *Friscone* to the facts in *Walker*, the Tax Court concluded that the Walkers' divorce decree granted each ex-spouse a 25–percent interest in Happy Valley, and when Bert transferred his interest to Claudia, his interest was extinguished. Therefore, "the divorce decree no longer controlled the apportionment of the Happy Valley property between petitioner and Mr. Walker as of the date of its sale to Parker Development." *Walker*, 86 T.C.M. (CCH) 683, 688 (2003). On that basis, the Tax Court held *Friscone* inapplicable to the facts before it.

Reviewing the Tax Court's decision, this Court finds no errors in its conclusions regarding Claudia's liability for the capital gains on the full 50–percent interest in the Happy Valley property. The Tax Court additionally found that Claudia "did not have a reasonable basis for the position taken on [her][ ] returns," rendering her liable for accuracy-related penalties. *Id.* at 689. For the reasons that follow, this Court disagrees with the Tax Court's finding that Claudia's claim lacked a reasonable basis.

Our independent review of the facts presented and relevant legal precedent indicates that Claudia's position was not as lacking of support as the Tax Court appears to have found. Bert's implied admission that he was liable for a portion of the capital gain on the sale of the Happy Valley property—as evidenced by his payment thereof on his 1997 tax return—supports the inference that both parties initially agreed that the sale to Parker Development was "on behalf of" Bert, in partial satisfaction of his obligation to Claudia under the marital settlement. Temp. Tax. Reg. § 1.1041–1T(c), Q & A–9. As a result, Claudia's adherence to that belief, and her argument that the substance of the transaction should control the matter, rather than a strict adherence to the form of the transaction, was not unreasonable. Incorrect and ultimately unavailing, perhaps; but nonetheless reasonable. In sum, this Court finds that Claudia's position was not unreasonable, merely incorrect.

Finally, the Government's informal notification to plaintiffs that it would concede this case upon successful resolution of the related Tax Court case does not undermine the Government's position. Faced with its belief that it might well prevail in its action in the Tax Court, the Government took steps to keep the plaintiffs' litigation costs to a minimum—a wholly reasonable measure.

Based upon the foregoing, the Court finds that the Government reasonably believed that Claudia might succeed in her action before the Tax Court, and also reasonably believed that "Bert's estate has fact hazards associated with their case." D's Br. in Opp. to P's Mot., Ex. 5, at 4. Consequently, the Court holds that the Government was substantially justified in adopting a whipsaw position as between Bert and Claudia Walker. As a result, the plaintiffs shall not be treated as a prevailing party under Section 7430, and therefore the Court must conclude that the plaintiffs cannot succeed on the instant motion.

### B. Net Worth of Bert Walker's Estate

Both parties agree that Section 7430 mandates that a prevailing party may not be treated as such for the purpose of recovering costs under this Section unless the party can also meet the net worth requirements set forth in Sections 7430(c)(4)(A)(ii), (c)(4)(D)(i)(I), and 28 U.S.C. § 2412(d)(2)(B). Furthermore, the parties also agree that, under the facts at bar, these statutes require

the plaintiffs to establish that the estate of Bert Walker, as of August 31, 2001 (the date of his death), did not exceed $2,000,000.

The plaintiffs' motion contained the averment that Bert Walker's estate did not exceed $2,000,000, and supported this statement with: (1) an unaudited statement of financial condition, (2) an affidavit from the accountant who prepared the statement (A. Craig Brooks), (3) the estate's Federal Estate Tax Return (Form 706), and (4) an affidavit from Mr. Steven M. Zipper, the attorney who represented Mr. Walker prior to his death and represented the estate during its administration. The plaintiffs concede that "Bert did not keep careful records," regarding the acquisition of one of the estate's major assets, but argue that the valuation of said asset is sufficient to determine that the estate's assets do not exceed the net worth requirements of Section 7430. P's Reply Mem. at 8.

A significant portion of the parties' briefs deal with the rules pertaining to asset valuations, and the question of whether or not the Walker estate has properly accounted for its assets. Since, however, this Court has already determined that the Government's position was substantially justified, this issue does not merit discussion at great length. In light of the Government's acceptance of the estate's Federal Estate Tax Return (Form 706), this Court finds that the plaintiffs have sufficiently established that the estate does not exceed the net worth requirements of Section 7430. Thus, had the plaintiffs succeeded in the main, the defendant's argument regarding the net worth requirement would not prevent the plaintiffs from recovering costs as a prevailing party under Section 7430.

C. Administrative and Litigation Costs Sought by Plaintiffs

Since the plaintiffs cannot succeed on their motion for fees pursuant to Section 7430 because the defendant's position was substantially justified, there is no need to address the question of whether or not the costs the plaintiffs present in support of the instant motion are reasonable and allowable under Section 7430. Nonetheless, this Court

shall briefly address the parties' respective arguments.

1. Costs sought in connection to the 1998 tax year.

The plaintiffs assert that they are entitled to recover reasonable administrative costs arising out of the IRS's disallowance of their claim for an abatement of tax for 1998, issued on July 24, 2002. Supporting their contention, the plaintiffs urge the Court that Section 7430(e) permits the recovery of administrative fees "in the case of—(1) multiple actions which could have been joined or consolidated, or (2) a cases or cases involving a return or returns of the same taxpayer...which could have been joined in a single court proceeding in the same court * * *." 26 U.S.C. § 7430(e). Thus, the plaintiffs ask us to interpret the foregoing to permit recovery of administrative costs that they attribute to their efforts pursuing the 1998 claim for an abatement of tax, as both the 1998 claim and the 1997 refund claim are premised upon the same issue: the capital gain on the sale of the Happy Valley property.

There is a fatal flaw to the plaintiffs' logic, as the defendant correctly notes in its brief opposing the motion at bar. Specifically, the plaintiffs' claim with respect to 1998 is for an abatement of tax, not a refund. In fact, the taxes assessed against Bert Walker for 1998 remain unpaid. And, "[t]he *Flora* full payment rule requires that taxpayers prepay the tax principle before the Court of Federal Claims will have subject matter jurisdiction over their tax refund action under [28 U.S.C.] § 1491." *Shore v. United States,* 9 F.3d 1524, 1527 (Fed.Cir.1993) (referring to the full payment rule set forth in *Flora v. United States,* 357 U.S. 63, 78 S.Ct. 1079, 2 L.Ed.2d 1165 (1958)). Hence, this Court lacks subject matter jurisdiction over the 1998 abatement. As a consequence, and contrary to the requirements expressly set forth in Section 7430(e), the 1998 and 1997 claims could *not* "have been joined or consolidated," Section 7430(e)(1), or "joined in a single court proceeding in the same court." 26 U.S.C. § 7430(e)(2). Accordingly, the plaintiffs' claim for administrative fees attributable to

the disallowed abatement of tax for 1998 must be rejected.

2. Costs sought in connection to the 1997 tax year.

A prevailing party is entitled to reasonable litigation and administrative costs as defined in Sections 7430(c)(1) and (2). Below, this Court addresses both the plaintiffs' accounting of their costs, and also the defendant's allegations that the plaintiffs have failed to establish their reasonable and allowable costs.

(a) 1997 Administrative costs.

With regard to the plaintiffs' averments of administrative costs, the defendant argues that the plaintiffs' supporting documentation includes administrative fees that (1) co-mingle the 1997 and 1998 claims, and (2) predate the July 24, 2002 notice of claim disallowance. In the preceding subsection, this Court determined that the plaintiffs are not entitled to recover any of the costs associated with the 1998 tax year. Our review of the supporting documentation provided by the plaintiffs to substantiate their claim for costs reveals that they failed to clearly apportion costs between the 1997 and 1998 claims. Thus, if the plaintiffs could recover under Section 7430, they would be required to submit a separate accounting of the costs solely attributable to 1997 before receiving any award.

Additionally, Section 7430(c)(2) provides that reasonable administrative costs:

shall only include costs incurred on or after whichever of the following is the earliest: (i) the date of the receipt by the taxpayer of the notice of the decision of the Internal Revenue Service Office of Appeals; (ii) the date of the notice of deficiency; or (iii) the date on which the first letter of proposed deficiency which allows the taxpayer an opportunity for adminis-

trative review in the Internal Revenue Service Office of Appeals is sent.

26 U.S.C. § 7430(c)(2).

In this case, no notice of deficiency was issued; nor was a letter sent regarding a proposed deficiency. Thus, the controlling date for any potential award of administrative fees in this situation is July 24, 2002—the date that the IRS Office of Appeals issued its decision regarding the 1997 refund claim. The plaintiffs' motion includes fees that date back as far as September 2001. Therefore, had the plaintiffs succeeded in the instant motion, this Court would have deducted all fees that predate the July 24, 2002 decision from the award amount.

(b) 1997 litigation costs.

Finally, the plaintiffs' accounting of their litigation costs with respect to the 1997 refund claim appears to include costs allocable to the 1998 abatement issue. Therefore, as noted above, had this Court found in favor of the plaintiffs' motion, a revised accounting of the plaintiffs' costs that relate only to the litigation of the 1997 refund claim would be required prior to the entry of any award in the plaintiffs' favor.

CONCLUSION

Based upon the Court's consideration of each of the arguments set forth in the parties' briefs, the Court concludes that the defendant prevails in this action for attorney's fees and costs. The plaintiffs have failed to prove that they are entitled to recover reasonable administrative and litigation costs pursuant to Section 7430. Therefore, the plaintiff's motion is DENIED.